UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| TRAVIS LeBLANC, et al, | ) | Civil Action |
| Plaintiffs, | ) | No. 25-542 |
| | ) | |
| vs. | ) | |
| | ) | April 30, 2025 |
| UNITED STATES PRIVACY AND | ) | 2:02 p.m. |
| CIVIL LIBERTIES OVERSIGHT | ) | Washington, D.C. |
| BOARD, et al., | ) | |
| Defendants. | ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**TRANSCRIPT OF MOTION HEARING**
**BEFORE THE HONORABLE REGGIE B. WALTON**
**UNITED STATES DISTRICT COURT SENIOR JUDGE**

<u>**APPEARANCES**</u>:

FOR THE PLAINTIFFS:
        ELISABETH S. THEODORE
        DANIEL R. YABLON
        CALEB THOMPSON
        Arnold & Porter Kaye Scholer LLP
        601 Massachusetts Avenue, NW
        Washington, DC 20001
        (202) 942-5891
        elisabeth.theodore@arnoldporter.com

FOR THE DEFENSE:
        EMILY M. HALL
        DOUGLAS C. DREIER
        United States Attorney's Office
        for the District of Columbia
        601 D Street, NW
        Washington, DC 20530
        (202) 307-6482
        emily.hall@usdoj.gov

*This transcript is <u>work product</u>. This transcript shall be*
*considered null and void if the transcript is edited,*
*disassembled, screenshot, and/or distributed in any manner by*
*any party without authorization of the signatory.*

Court Reporter: Elizabeth Davila, RPR, FCRR
        Official Court Reporter

Proceedings reported by machine shorthand.
Transcript produced by computer-aided transcription.

1          **P R O C E E D I N G S**

2              THE COURTROOM DEPUTY:  This is Civil

3     Action 25-542, Travis LeBlanc, et al. versus the

4     United States Privacy and Civil Liberties Oversight Board,

5     et al.

6              May I have counsel approach the lectern and state

7     your appearance for the record beginning with plaintiffs'

8     counsel.

9              MS. THEODORE:  Good afternoon, Your Honor.

10    Elisabeth Theodore on behalf of the plaintiffs.

11             THE COURT:  Good afternoon.

12             MS. HALL:  Good afternoon, Your Honor.

13    Emily Hall from the Department of Justice on behalf of

14    defendants.

15             THE COURT:  Good afternoon.

16             Okay.  This matter is before the Court on

17    plaintiffs' motion for summary judgment and defendants'

18    cross-motion for summary judgment in opposition to the

19    plaintiffs' motion for summary judgment.

20             Plaintiffs' counsel may proceed.

21             MS. THEODORE:  Thank you, Your Honor.

22             Good afternoon.  Elisabeth Theodore on behalf of

23    the plaintiffs Travis LeBlanc and Ed Felten, both of whom

24    are in the courtroom here today.

25             The Privacy and Civil Liberties Oversight Board is

```
 1    a nonpartisan expert commission that Congress designed to

 2    act as an independent check on the executive --

 3              THE COURT:  Wait.  Slow down.  She's trying to get

 4    down what you say.

 5              MS. THEODORE:  I'm sorry.  I apologize.

 6              -- as an independent check on the executive branch

 7    to ensure that national security authorities are

 8    appropriately balanced with privacy and civil liberties.

 9    And the board cannot perform that independent oversight

10    function if it's beholden to the same executive branch that

11    it's supposed to oversee.

12              Congress made very clear that the President could

13    not remove PCLOB members without cause by deleting prior

14    statutory language giving the President the ability to

15    remove PCLOB members at his, quote, pleasure; by deleting

16    language saying that PCLOB members were subject to

17    presidential, quote, supervision by stating that PCLOB

18    members, quote, shall serve a term of six years; by removing

19    the board from the Executive Office of the President; and

20    stating that it would be independent by conferring on the

21    PCLOB the oversight duties I have just described so they're

22    incompatible with removal at will; by providing for a

23    multi-member board with staggered terms and partisan

24    balance --

25              THE COURT:  I guess the question that's raised is:
```

1    If Congress's intent was that members cannot be removed at

2    the whim of the President, why didn't Congress specifically

3    say that?

4            MS. THEODORE:  Your Honor, I think that by

5    removing language about serving at the pleasure they did the

6    equivalent of specifically saying that.

7            And what the D.C. Circuit held in *Severino* very

8    clearly was that a statute can clearly constrain the

9    President's removal power even if it doesn't explicitly

10   refer to for-cause removal.

11           Under the defendants' interpretation of this

12   statute, that's just an empty letter because there is

13   nothing else other than using those magic words about

14   for-cause removal that Congress could possibly have done in

15   this statute to convey that it wanted to impose removal

16   protections.

17           I would point Your Honor to the SEC statute which

18   likewise says that:  SEC commissioner shall hold office for

19   a term of five years.  And it doesn't use any language about

20   for-cause removal specifically.

21           And the D.C. Circuit held in the *Free Enterprise*

22   case, in the portion of the opinion that was not overturned

23   by the Supreme Court that, in fact, imposes the for-cause

24   removal protection and did so in what's called the *Jarkesy*

25   case.

1          The United States has taken the position that the

2     SEC statute imposes for-cause removal protections in arguing

3     to the Supreme Court in the *Free Enterprise* case, and the

4     Supreme Court assumed that it did in the *Free Enterprise*

5     case.

6          This statute, frankly, Your Honor, is so much

7     stronger than the SEC statute with respect to removal

8     protection because it has all of that history about the

9     removal of the "serve at the pleasure" language.  They don't

10    dispute that Congress's deletion of the serve at the

11    pleasure language would be completely nullified under their

12    interpretation.

13         Case after case says that courts have to give

14    effect to Congress's statutory language.  Their response is,

15    essentially, something like:  Well, there are a lot of

16    changes, so the court can decide to give effect to some of

17    them and not others; and that's just not an appropriate

18    approach to statutory interpretation.

19         But it's also the case that, frankly, their

20    interpretation would nullify most of the changes that

21    Congress made in 2007.  It would essentially nullify the

22    partisan balance requirement; it would nullify the

23    prohibition on considering local affiliations and

24    appointments given what the President did here was he

25    removed everyone who had a particular political affiliation.

1      It would nullify the independence requirement.  It would

2      nullify the removal of the PCLOB from the Executive Office

3      of the President; and it would nullify the specific

4      statutory text that requires PCLOB members to report

5      minority views to Congress because what if their view of

6      what the statute means is that the President can remove

7      anyone who might hold a view with which he disagrees and

8      create a PCLOB that only has one set of views with which the

9      President agrees.

10              It would also nullify the "shall serve a term of

11     six years" language; and they have no interpretation of what

12     the words "shall serve" are doing in the statute other than

13     to confer a tenure protection.

14              Their principal argument seems to be that the mere

15     use of the word "term," regardless of the words around it,

16     means that there is removal authority; but the cases they

17     cite don't support that proposition at all.

18              They cite multiple statutes in which Congress has

19     used the phrase:  Shall serve a term of X years unless

20     sooner removed by the President which, I think, quite

21     clearly shows that the ordinary understanding of shall serve

22     a term of six years is that it confers removal protection

23     when you don't have that language.

24              Their response, in their reply brief, is, quote:

25     That different Congresses from different eras use different

1    language at different times.  And that response -- I was

2    very surprised because it's at odds with their entire theory

3    of this case which is that -- which depends on arguing that

4    Congress had to have understood the mere word "term" to

5    unilaterally prohibit "at will removal," nullify "at will

6    removal" because there was a statute from 100 years ago, in

7    *Parsons,* that used the word "term" in a different context.

8    But here we have Congress using the exact language to mean

9    exactly what we're saying it means.

10          I do want to address the argument that they made

11    in their reply brief at greater length that our reading

12    requires the Court to conclude the statute and its removal

13    for cause.  The Court doesn't need to decide that because

14    it's undisputed that there was real cause here.  But to be

15    clear, our reading doesn't require that at all.

16          For 90 years since *Humphrey's*, courts have said

17    that some statutes allow at-will removal when others allow

18    for-cause removal.  The Court can presume that Congress

19    legislated against that background understanding when it

20    created a multi-member nonpartisan agency with staggered

21    terms.  The Court can conclude that it intended the exact

22    same removal protection that has long applied to this kind

23    of agency.  And that is exactly what the D.C. Circuit upheld

24    in *Free Enterprise* with respect to the SEC; that's exactly

25    what the Fifth Circuit upheld in *Jarkesy* with respect to the

1    SEC; and that's exactly what the Supreme Court assumed in

2    *Free Enterprise* with respect to the SEC.

3            THE COURT:  What did Congress say, I think it was

4    in 2007, when the statute was revived about why the

5    provisions were implemented?

6            MS. THEODORE:  So Congress said that it was being

7    implemented because the PCLOB, the agency, as constituted

8    was not serving as an effective check on the President and

9    it didn't have sufficient independence from the President.

10   This revision was passed by Congress, like, five -- I don't

11   know -- within a week of the testimony by a prior member of

12   the board who had resigned in protest when the White House

13   had red-lined the board's first report to Congress and took

14   out all of the provisions, all of the things that the White

15   House didn't like.  So the express -- the whole purpose of

16   this revision was to secure the board's independence from

17   the President, specifically from the President.  You just

18   can't do that if you allow the President to remove at will

19   in the way the defendants say.

20           THE COURT:  Is there anything in the record about

21   how Congress became aware of the red-lining that President

22   Bush or someone in his administration had done in that first

23   report?

24           MS. THEODORE:  I am not aware of how it became

25   public.  There was a *Washington Post* article about it, and

1    the actual red-line was attached to the legislative hearing

2    record.  So I assume it may be that the board member Lenny

3    Davis, who resigned, maybe made that public.  But certainly

4    Congress was well aware of the red-lining; it was an exhibit

5    to the agency -- to the congressional hearing.

6            THE COURT:  Okay.

7            MS. THEODORE:  I also wanted to address the

8    argument that they raise in their reply brief about

9    inspector generals.  They say that Congress's purported

10    decision to give the President the ability to remove IGs

11    shows that oversight is incompatible with removal at will.

12    That's wrong for multiple reasons.

13            One is -- well, first of all, whether the

14    President can remove IGs at will is currently the subject of

15    a lawsuit pending before another judge in this court.

16            The second, the PCLOB is just fundamentally

17    different than IGs.  IGs are not heads of independent

18    agencies, they're not meant to be providing independent

19    oversight.

20            5 U.S.C. 403, which is one of the statutes

21    creating IGs, says specifically that IGs are subject to the,

22    quote, general supervision of the agency head.  So that's

23    exactly the language that Congress took out of the PCLOB

24    statute.

25            The statute setting forth the duties and

1    responsibilities of IGs, which is 5 U.S.C. 404, it doesn't

2    use the word "oversight" at all.  IGs are really auditors

3    intended to look at waste, fraud, and abuse, and improve the

4    economy and the efficiency of a particular agency.  They're

5    not at all like the oversight function that PCLOB members

6    are intended to perform.

7            THE COURT:  Do IGs have any responsibility of

8    reporting any of their findings to Congress?

9            MS. THEODORE:  I think that the IG act does

10   include, you know, some provisions saying you can send some

11   reports to Congress.  But it's nothing like the kind of very

12   significant reporting to Congress that the PCLOB members are

13   required to do on a semiannual basis where they're required

14   to report minority views and where they are specifically

15   required to report any time they have provided the advice

16   that the executive branch hasn't followed.

17           Again, they don't have an oversight role.  They're

18   subject to the supervision of the agency head and they're

19   not meant to be independent, so it's totally different.

20           I will note there is sort of an equivalent to IGs

21   in a separate statute relating to privacy and civil

22   liberties, which is 2000ee-1, which is subset.  Individual

23   agency privacy civil liberties officers which are

24   individuals within the agency.  So those are more equivalent

25   of the IGs; the board, which is its own independent agency,

1    is not.

2                So let me turn -- unless the Court has any, sort

3    of, more questions about the text, structure, and function

4    arguments --

5                THE COURT:  I don't think so.

6                MS. THEODORE:  Okay.  I could turn -- let me turn

7    briefly to the constitutional avoidance argument.

8                I think it's very telling that the government has

9    affirmatively decided not to argue that our interpretation

10   would violate the Constitution.  That's because the removal

11   restrictions here, if the Court agrees that there are

12   removal restrictions here, are, obviously, constitutional

13   under *Humphrey's* because the PCLOB is a multi-member board

14   whose members just don't wield any executive power

15   whatsoever.  It's not even -- it's not even that they don't

16   wield substantial executive power, they just don't wield

17   executive power.

18               So constitutional avoidance doesn't come into play

19   where the Supreme Court has literally decided that our

20   statutory interpretation is consistent with the

21   Constitution.

22               In any event, our interpretation is the only

23   plausible interpretation of the statute in light of

24   everything I have just described, so constitutional

25   avoidance doesn't come into play for that reason either.

```
 1              Let me turn to the remedy issue.

 2              So the plaintiffs are entitled to reinstatement --

 3              THE COURT:  Let's deal with the first two issues

 4    first and, then, we'll deal with remedies subsequent to my

 5    hearing from them on those.

 6              MS. THEODORE:  Thank you, Your Honor.

 7              THE COURT:  Thank you.

 8              MS. HALL:  Good afternoon, Your Honor.

 9              This case is a simple one looking at the statute

10    and the D.C. Circuit's decision in Severino.

11              Plaintiffs' attempt to make it difficult by

12    looking at statutory history, structure, and function, but

13    they take those pieces of information out of context and try

14    to divorce them from the proper consideration of the

15    D.C. Circuit's opinion in Severino which made clear that

16    boards like the Privacy and Civil Liberties Oversight Board,

17    boards like the Administrative Conference of the

18    United States are subject to the presumption that the

19    President can remove officers of the United States at will.

20    There is nothing in the statute here or the structure or

21    function of the board --

22              THE COURT:  How was the board here substantially

23    different from Humphrey's Executor to the extent that there

24    should be a different result here as compared to what the

25    Supreme Court found in that case?
```

1        MS. HALL:  Your Honor, I think there are several

2   reasons.  The first is that the statute in *Humphrey's*

3   *Executor* regarding the Federal Trade Commission did include

4   a textual removal restriction.  It provides expressly in the

5   statute that commissioners are removable only for

6   inefficiency, malfeasance duty -- neglect of duty or

7   malfeasance --

8        THE COURT:  The Supreme Court didn't say that that

9   was determinative of whether there was authority to remove.

10  They said that's one way that Congress could indicate that.

11  But they also said that the mission of the entity and other

12  factors could also weigh in favor of the President not

13  having unfettered removal authority.

14       MS. HALL:  Certainly, Your Honor.  I just think

15  the presence of the statutory removal restriction is, first

16  and foremost, there.

17       As to the structure and function, the Federal

18  Trade Commission was engaged in quasi-legislative and

19  quasi-judicial activities, as the Supreme Court in

20  *Humphrey's Executor* characterized those activities.  And the

21  responsibilities of the Privacy and Civil Liberties

22  Oversight Board are different.

23       The primary function of the Privacy and Civil

24  Liberties Oversight Board is to provide advice to members of

25  the executive branch, particularly the President.

```
1              In the course of doing that, the board --

2              THE COURT:  Don't they also have an obligation to

3     provide information and advice to the Congress?

4              MS. HALL:  Your Honor, I do think that they have a

5     responsibility of providing information, but they don't have

6     a role providing advice to Congress.

7              THE COURT:  But as I understand it, the board was

8     created because of the concern after 9/11 and the

9     aggressiveness, justifiably, on the part of the executive

10    branch to make sure that 9/11 would not repeat itself; that

11    they were concerned that aggressiveness by the executive

12    term to that could possibly undermine the privacy and the

13    civil liberties of the American public, and that's why they

14    created the board.  Right?

15             MS. HALL:  That's right, Your Honor.  And I think

16    the board --

17             THE COURT:  How could the board do that if the

18    President has the authority to get rid of whoever he wants

19    at any time so he can thwart any objection to what the

20    administration wants to do?

21             MS. HALL:  Well, Your Honor, I don't think that

22    the existence of this advisory board as an advisory board

23    that is responsible for advising the President and advising

24    the executive branch can effectively --

25             THE COURT:  How can they advise in a nonpartisan
```

1    way if the President has the authority to partisanly get rid

2    of who he doesn't want?

3           MS. HALL:  Well, the same way, Your Honor, that

4    the administrative conference of the United States was able

5    to advise, as the court in *Severino* mentioned, better

6    because it was going to be individuals in whom the President

7    trusted.

8           The D.C. Circuit, in *Severino,* made particular

9    emphasis of the fact that the Administrative Conference of

10   the United States, which was responsible for advising the

11   President and advising the executive branch, and said that

12   the advising function cannot be effectively performed if the

13   President doesn't have control over the members of that

14   board.

15          THE COURT:  But we're talking about, here, what is

16   fundamental to America, at least it has been historically,

17   and that is the privacy and the civil liberties of the

18   American public.

19          I think it was justifiably a concern that,

20   obviously, the administration was going to be aggressive in

21   trying to address the consequences of 9/11.  And it seems to

22   me Congress said:  Okay, fine, you can be aggressive; but we

23   want to make sure that you are not trampling on the rights

24   and the liberties of the American public.

25          I find it difficult to understand how the board

1    can do that if the President has the authority to get rid of

2    whoever he wants because he doesn't want dissent.

3         MS. HALL:  Your Honor, I think that's exactly for

4    the reasons the D.C. Circuit identified in *Severino*

5    regarding the function of an advice-giving agency.

6         Congress decided, in creating the Privacy and

7    Civil Liberties Oversight Board, that it wanted an entity

8    within the executive branch that was responsible for

9    advising the President, advising the executive branch, and

10   giving them all of the information that they need to ensure,

11   as Your Honor mentioned, that civil liberties are adequately

12   protected.

13        THE COURT:  Isn't the fact that here we're talking

14   about the democratically associated individuals on the board

15   being those who were targeted by a Republican President,

16   isn't that suggestive of an attempt to try and get rid of

17   those who might dissent against what he wanted to do?

18        MS. HALL:  Your Honor, I think any reading into

19   the partisan affiliation of the individuals who were removed

20   from the board would be speculative.  The President --

21        THE COURT:  You can't sort of -- I hate to go

22   here.  But you can't sort of look at this in a vacuum.

23        You have to look at everything that is going on.

24   I think it's clear what is going on; and that is an attempt

25   to garner power and to put that power above reproach by

1      anybody.

2              MS. HALL:  Your Honor, I think it was actually an

3      effort to ensure that the advice and the reports and the

4      advising that this board was going to engage in for the

5      President and for his appointees as the executive branch

6      would be advice that the President was interested in hearing

7      and listening to.

8              THE COURT:  Advice he wants, right?  Advice he

9      wants.

10             MS. HALL:  Advice that he trusts --

11             THE COURT:  Not advice that is giving a bipartisan

12     honest perspective of the situation.  Advice he wants.

13             MS. HALL:  Well, Your Honor, I think it's the

14     President's prerogative to determine who he trusts to give

15     that kind of nonpartisan advice, and that's why the

16     President is responsible for appointments here; because it's

17     the President's role to determine whether he is receiving

18     advice that he trusts and from advisors that he trusts

19     particularly.  So I don't think --

20             THE COURT:  That doesn't make sense to me because

21     that is suggesting that the President can just put in

22     lackeys that tell him everything he wants and doesn't tell

23     him what he really needs to know.

24             How can the President intelligently make

25     determinations that are in the best interests of the civil

1    liberties and the privacy of the American public if the

2    people he has in those positions are going to do nothing but

3    tell him what he wants to hear, and when he doesn't want to

4    hear anything bad.

5            MS. HALL:  Your Honor, I don't think that's the

6    situation that we have here.  I think this situation is very

7    similar to the situation in *Severino* where the key is that

8    the President wants to put people on an advisory committee

9    and an advisory board who are going to give him advice that

10   he trusts.  It's not about what --

11           THE COURT:  Why did Congress make the changes that

12   it made in 2007?

13           Didn't they make those changes because they were

14   concerned that the Bush Administration had marked up what

15   they had prepared and felt that the administration was

16   trying to hide from Congress and the public what was

17   actually occurring?

18           MS. HALL:  Your Honor, I believe that was part of

19   the justification that Congress gave --

20           THE COURT:  So if they did that, why wouldn't they

21   want to make sure that those people who were on the board

22   were nonpartisan and that they would give accurate

23   indication of what the situation was as compared to what

24   maybe the President wanted to hear?

25           MS. HALL:  Well, Your Honor, I don't think that

1    permitting at-will removal is inconsistent with any of that.

2         The Congress made the decision to remove the board

3    from the Executive Office of the President where it was

4    under the general supervision of the President, which is

5    different from the sort of supervision that the President

6    engages in of agencies including agencies that are denoted

7    as independent.

8         THE COURT:  Isn't that an indication they wanted

9    to take some authority away from the President to dictate

10   who was on the board?

11        MS. HALL:  Your Honor, I don't think it was a move

12   to reduce the President's authority over who was on the

13   board.  I think it was a move to reduce the President's

14   day-to-day supervision of the activities of the board.  Here

15   we have a board --

16        THE COURT:  Do you honestly believe that if

17   someone has a political agenda that they're going to put in

18   place those who are going to oppose that agenda and,

19   therefore, they're going to get a counter view of maybe what

20   their perspective is?  Is that realistic?

21        MS. HALL:  Your Honor, I don't think that the goal

22   here was to force the President to include people who are

23   opposed to his agenda.  I think the idea --

24        THE COURT:  Why did he just get rid of the

25   Democrats?

1          MS. HALL:  Your Honor, I -- the President made a

2     point in his removal notice.  He did not state that the

3     individuals who were removed were removed because they were

4     Democrats.

5          THE COURT:  But that's who they were.

6          MS. HALL:  They are, in fact, Democrats, that is

7     my understanding of their political affiliation.

8          THE COURT:  You are saying I should be naïve

9     enough to believe that he didn't know that?

10          MS. HALL:  Your Honor, I don't think that the

11     President -- I don't think you need to believe that the

12     President knew or didn't know the political affiliation of

13     the members who he removed because that was not a cited

14     reason for their removal.

15          THE COURT:  What was his reason?

16          MS. HALL:  The President -- the only reason the

17     President gave and the only reason the President needed to

18     give was that he had the authority under Article II to

19     remove them from the board.

20          THE COURT:  So it would appear that the President

21     believes he can remove anybody --

22          MS. HALL:  The President --

23          THE COURT:  -- from any position.

24          MS. HALL:  That's not what we're arguing here.

25          THE COURT:  Is that the administration's

1       position? -- that the President of the United States,

2       regardless who that person is, has the right to remove

3       anybody he wants from a board regardless of what the

4       congressional intent was?

5                MS. HALL:  Well, Your Honor, in this case, where

6       Congress did not enact a textual removal restriction for the

7       members of the board, it is the government's position that

8       the President has the authority to remove members of that

9       board.

10               Congress knew how to impose removal restrictions,

11      it has done it in statute after statute, and it elected not

12      to do so here.  Congress had enacted statutes just a couple

13      of years --

14               THE COURT:  The Supreme Court didn't say that was

15      determinative of whether the President had removal

16      authority.  The Supreme Court said Congress did not

17      specifically indicate such language in the statute.

18               MS. HALL:  Your Honor, that's right.  In

19      *Humphrey's Executor* the Court pointed out that language and

20      also analyzed the structure and function of the FTC in that

21      case.

22               But again, going back to the structure and

23      function of the board here, the structure and function of

24      the PCLOB are not similar to the structure and function of

25      the FTC or of the War Claims Commission presented to you in

1      *Weiner*, the other case that plaintiffs cite regarding -- and

2      the *Severino* cites regarding the propriety of implying

3      removal restrictions.

4            I think that the discussion in *Severino* of both

5      *Humphrey's Executor* and *Weiner* is really important here.

6      *Severino* discusses those two cases as the example of when

7      Congress may have implied without including textual removal

8      restrictions.  And the key that *Severino* mentions is these

9      quasi-judicial functions.  So the War Claims Commission in

10     *Weiner* was engaged in adjudication of particular claims.

11     And *Severino* emphasized and *Weiner* emphasized that there is

12     a necessity for an entity that is engaged in the

13     adjudication of a particular claim to a particular party,

14     and that specific judicial function that mirrors the sorts

15     of functions that Article III courts perform that requires

16     that that individual not be beholden to the President.  That

17     is not the sort of function that the PCLOB performs.  PCLOB

18     does not engage in adjudication of any type of claim, it

19     does not have any quasi-judicial authority.  The

20     plaintiffs' --

21            THE COURT:  It also does not perform any executive

22     function either, do they?

23            MS. HALL:  Well, Your Honor, they do perform an

24     executive function.  *Severino* makes clear that advising the

25     President is an executive function.  *Severino* says that

1    multiple times.  It emphasizes the importance of advising

2    the President and advising the executive branch being key

3    factors met in *Severino* led to the Court's conclusion that

4    the individuals on AFIS [sic] needed to be removable at

5    will.

6            THE COURT:  Well, I know that reauthorization of

7    Section 702 of FISA is scheduled to occur as to whether it

8    will be reauthorized next year.  And one of the things I

9    understand that the dismissed members indicate is that with

10   the case -- or the situation in its current status, the

11   PCLOB would not be in a position to weigh in and give

12   assistance to Congress as to whether 702 should be

13   reauthorized.

14           I mean, isn't that a problem when Congress is, at

15   least in part, relying upon an agency that is under the

16   executive branch to give it a nonpartisan perspective

17   regarding a very important statute, but a statute that does

18   have the potential of intruding on the privacy rights of the

19   American public.  It would seem to me we would want the

20   PCLOB to be in a position where it could provide nonpartisan

21   forthright honest assessment of a situation so that Congress

22   can make an informed decision, at least in part, as to

23   whether this is a statute, despite its importance, that

24   should be maintained.

25           MS. HALL:  Well, Your Honor, I don't think that

1      PCLOB is in a position where Congress can't rely on its

2      expertise in order to make a decision on Section 702; that's

3      for a few reasons.

4              One is that:  Even in a subquorum state, the

5      Privacy and Civil Liberties Oversight Board can issue staff

6      reports and it can issue reports on behalf of the particular

7      members who are on the board, even if the board exists

8      without a quorum.

9              Secondly, the board previously issued a report on

10     Section 702, I believe two years ago.  And that -- the

11     analysis in that report I think is equally applicable today.

12             I'd also point out that Congress has, in the past,

13     reauthorized Section 702 without any kind of recent input

14     from the board.  Congress often acts without reliance on the

15     board in making these sorts of determinations.

16             THE COURT:  But I know there has been a lot of

17     concerns on the Hill about 702 and whether it should be

18     reauthorized despite the importance of the statute in,

19     potentially, detecting terrorist activity.

20             MS. HALL:  Your Honor, I don't dispute Congress's

21     debate regarding that statute.  But again, I think the

22     history of PCLOB demonstrates that Congress is perfectly

23     capable of making a determination about legislation without

24     PCLOB being involved, and that's reflected in part in

25     PCLOB's role -- its primary role as and advisor for the

1    President and for the executive branch.

2         THE COURT:  Thank you.  Anything else?

3         MS. HALL:  Your Honor --

4         THE COURT:  We'll get to remedies after I hear

5    from them.

6         MS. HALL:  Sure.  I just wanted to respond to a

7    couple of points that plaintiffs just made, if Your Honor

8    doesn't mind.

9         Your Honor, as to the constitutional avoidance

10   argument, plaintiffs assert that this board is obviously

11   constitutional if it had removal restrictions.  Again, our

12   position is that the text of the statute is clear:  There is

13   no basis under the *Severino* analysis of structure and

14   function to infer removal protections here, so there is no

15   need to reach any kind of constitutional argument.

16        THE COURT:  What about the fact that -- I mean,

17   there was a term of six years that was imposed that had not

18   previously been proposed.  But what about the fact that

19   Congress decided that no more than three members of any

20   party could comprise the five-member board in order to try

21   to ensure that there was a bipartisan makeup of the board.

22        MS. HALL:  Certainly, Your Honor.  I think as to,

23   first, taking the term provision, *Severino* again makes clear

24   that a term provision does not confer removal restrictions.

25   I think the main language that plaintiffs latch on to, the

1    "shall serve" language -- the most natural reading of that

2    language confers a mandatory command over members of the

3    board.  And I don't think that anyone here -- certainly not

4    the government, and I don't think the plaintiffs -- takes

5    the position that members of the board are not permitted to

6    leave if they were to choose to pursue different employment.

7    If there is a natural reading of the "shall serve" language,

8    it is a command for those members.  And I don't think anyone

9    is arguing that those members are required to serve the

10   entire six years.

11        As to Your Honor's second point regarding the

12   partisan balance, the Supreme Court in *Collins v. Yellen*

13   identified a whole list of different boards and different

14   commissions within the federal government that are described

15   as independent that the Supreme Court says do not have --

16   Congress did not give them any protection from at-will

17   removal, and many of those boards and commissions do have

18   partisan balance requirements.

19        So I think *Collins* makes very clear that the

20   Supreme Court does not understand partisan balance

21   requirements to infer or imply removal restrictions where

22   none exist separately in the text.  So the term-length

23   provision nor the partisan balance requirement confers

24   removal restrictions in light of the Supreme Court's

25   description of several different boards and commissions that

1     have that type of structure in *Collins*.

2              THE COURT:  I may have cut you off.  But could you

3     again -- if you didn't have the opportunity before -- to

4     explain how you distinguish *Humphrey's Executor* from

5     circumstances we have here to the extent that a different

6     result should occur here as compared to what the Supreme

7     Court reached in that case.

8              MS. HALL:  Yes, Your Honor.

9              As to the -- whether the removal restrictions

10    exist, I think that -- we have three reasons:  One is the

11    lack of a textural removal restriction which we have, of

12    course, discussed; the second is differences in structure;

13    and the third is differences in function.

14             So I think, if you look at the Supreme Court's

15    analysis in *Humphrey's Executor* of the structure and

16    function of that agency, it exists for reasons that were

17    quite, quite different from the functions of the board here.

18             The board's primary function is to provide advice

19    to the President and to the executive branch, and that's not

20    how the Supreme Court in *Humphrey's Executor* described in

21    the FTC.

22             As to the constitutional side of that issue,

23    again, we don't think that the Supreme Court's analysis in

24    *Humphrey's Executor* applies here because this is an advisory

25    board.

1          As the D.C. Circuit in *Severino* described,

2     presidential advice giving is -- triggers separate analysis

3     that is not quasi-legislative or quasi-judicial power and so

4     that, again, doesn't fall within the *Humphrey's Executor*

5     exception.

6          Just to kind of go back to first principles a

7     little bit, in the Article II context, the Supreme Court

8     says that the default rule is removal at will; and that not

9     just that it is the default rule as far as how we interpret

10    statutes, but it is also the default rule as far as what is

11    required and what the President must be able to exercise.

12    And the Supreme Court has repeatedly exercised most recently

13    in *Seila* law that there are only two exceptions to that

14    general rule that the President must be able to remove

15    members of the executive branch at will.

16          There is no dispute that members of the PCLOB are

17    members of the executive branch.  I think Section 2000ee

18    subsection (a) specifically says that it's an agency within

19    the executive branch.  And so that general rule must apply

20    unless one of two different limited, limited exceptions

21    applies.  The first is for inferior officers.  No one here

22    is contesting that the individuals here, the plaintiffs, are

23    principal officers; and the second is the *Humphrey's*

24    *Executor* exception.  Again, I would emphasize that the

25    *Humphrey's Executor* exception is very limited to the

1    agencies that wield only quasi-legislative or quasi-judicial

2    power.

3           Here, the PCLOB does not have quasi-legislative

4    power, it does not have quasi-judicial power.  It has an

5    advisory executive function, and that's what *Severino*

6    emphasized.

7           THE COURT:  You say they function as advisory; I

8    agree.  That is part of their function.

9           But isn't part of their function inconsistent with

10   how the entity has been named to have oversight

11   responsibility; and that's what I am struggling with.

12          How can it be expected that a board that is going

13   to have oversight responsibility and carry out that

14   responsibility if the entity or individual they're

15   overseeing can get rid of them at his or her whim?

16          I just don't see how you can have effective

17   oversight if the person who is supposed to be watched can

18   get rid of who is watching them.

19          MS. HALL:  I certainly understand, Your Honor; and

20   I think that the key here is, I think, twofold.

21          One is, if you look at the oversight section of

22   the statute, that is Section 2000ee(d)(2).  The statute

23   discusses the board's responsibility for reviewing

24   regulations, policies, and procedures; and reviewing

25   information sharing policies; and reviewing executive branch

```
1    actions.

2              THE COURT:  What did you say?  I didn't get that.

3    Reviewing what?  The last statement you made.

4              MS. HALL:  Reviewing other actions by the

5    executive branch.

6              THE COURT:  Okay.  Okay.

7              MS. HALL:  And so all of that review exists so

8    that the board can then perform its other functions.  They

9    review those things, but that is just -- that's exactly what

10   the Administrative Conference of the United States in

11   Severino was doing.  There is a lengthy discussion in

12   Severino that the function of the Administrative Conference

13   creates -- that it is supposed to review the way that the

14   executive branch functions; and it's supposed to make

15   recommendations for advice for the executive branch and the

16   President based on that review and that study.  So I think

17   this is, again, very analogous.

18             THE COURT:  What was that entity overseeing?

19             MS. HALL:  The Administrative Conference of the

20   United States?

21             THE COURT:  Right.

22             MS. HALL:  That was overseeing and offering

23   recommendations for the entirety of the executive branch and

24   administrative agencies.

25             THE COURT:  Okay.
```

1          MS. HALL:  So, again, it's a little bit of a

2     substantive focus than here.  Here, the substantive focus is

3     on counterterrorism and civil liberties.  There it was

4     focused on the efficient and effective functioning of the

5     executive branch and administrative agencies.  The types of

6     responsibilities are the same.  And so I think, for that

7     reason, *Severino* is really key here and really very on point

8     with --

9          THE COURT:  Isn't the significance of the mission

10    different?  I mean, what is important in America? -- at

11    least historically?  And hasn't that been the rights and the

12    freedoms and the liberties that we have?

13         MS. HALL:  Certainly, Your Honor.  I do think

14    civil liberties are incredibly important.  And I think that

15    is the reason that there is a board that exists that is

16    specifically focusing on these issues, because Congress made

17    a judgment that there should be an entity that thinks about

18    these questions and that studies these questions and is

19    offering particular advice to the President and particular

20    advice to executive branch agencies on these particular

21    questions.

22         I think that anyone that works in any kind of big

23    agency can attest that if you don't have a very particular

24    focus on a question, you have a very broad mandate, it's

25    easy for that particular thing to kind of fall through the

1    cracks.

2            Giving this one entity a kind of singular focus

3    helps to make sure that somebody is looking at these issues

4    all the time, somebody is focused on this and is

5    particularly tasked with these responsibilities.

6            THE COURT:  Okay.  Thank you.

7            MS. HALL:  Thank you, Your Honor.

8            THE COURT:  Any reply to what was just indicated?

9    Then we'll move on to the remedy issue.

10            MS. THEODORE:  Yes, Your Honor.

11            I would say that the statute that my opponent is

12    describing bears no relationship to the actual statute that

13    Congress wrote.

14            THE COURT:  Well, how do you distinguish -- she

15    says *Severino*, as far as the Circuit is concerned, is

16    dispositive and *Severino* should dictate how I rule; how

17    would you disagree with that?

18            MS. THEODORE:  Yes.  The PCLOB is just completely

19    different than the agency at issue in *Severino* in every

20    expect.

21            So the PCLOB -- the agency at issue in *Severino*

22    was the agency that was largely made up of political

23    appointees within the executive branch, so most of the

24    people were subject to the President's removal at will

25    because they were on the Administrative Conference because

1    they held, like, other executive branch positions

2    ex officio; that was something that *Severino* focused on.  It

3    was not meant to be a bipartisan board.

4            THE COURT:  As I understand, PCLOB members cannot

5    be employees of the federal government.

6            MS. THEODORE:  That is correct, Your Honor.

7            *Severino* was not set up in the same way that --

8    like the FTC was set up in *Humphrey's*, this multi-member

9    nonpartisan commission.  And that's the way that this

10   statute is set up.

11           In addition --

12           THE COURT:  In *Severino* -- again, I am not

13   familiar with that statute; I will educate myself before I

14   issue a ruling.

15           In *Severino*, was there any requirement regarding

16   what the makeup would be as it related to a political party?

17           MS. THEODORE:  No, there was not.

18           As I said, the fact that most of the people on the

19   board were just taken from executive branch political

20   affiliations indicated that it was going to be a board that

21   sort of represented the President's political party.

22           I think more broadly, it's just not -- so what the

23   D.C. Circuit said in *Severino* about the Administrative

24   Conference is that every single function of the

25   Administrative Conference revolved around providing internal

1    executive branch focused advice for the benefit of the

2    President and other executive agencies.  There was no

3    oversight function aspect to it whatsoever; and the PCLOB

4    couldn't be more different.

5         Ms. Hall said that the main purpose of the primary

6    objective is to provide advice to the President.  We know

7    that is not true because if you look at the red-line that

8    the government attached, ECF 18-1, page 2, that is a

9    red-line of the 2007 amendments, there was language in the

10   prior version of the statute that said -- in front of the

11   part of the statute that referred to "advice"; it said:  For

12   the purpose of providing advice to the President or to the

13   head of any department or agency of the executive branch,

14   "the board shall"; and then it listed all of the advice

15   functions.

16        Congress deleted that language.  They literally

17   took out the language that said that the board's advice

18   function was, quote, "for the purpose of providing advice to

19   the President."  So that is just completely inconsistent

20   with the government's position that the purpose of the board

21   is to provide advice to the President.  It's not.

22        In addition, if you look at the findings at the

23   beginning of the Privacy and Civil Liberties Oversight Board

24   statute, it says that the findings -- one of the findings is

25   that the purpose of the PCLOB is to provide a check and

1  balance; that's not an advice function, it's a check and

2  balance.

3          And then, on the purpose section of the statute,

4  it says:  The board shall analyze and review actions the

5  executive branch takes, and ensure that liberties concerns

6  are appropriately considered.  So again, that's not advice;

7  that's providing oversight, analyzing, and reviewing.

8          Even though the board does have an advice

9  function, what is notable about the way the board's advice

10 function operates is that -- what happened is executive

11 agencies can request that the board provide advice to them

12 and, then, the board actually takes a vote about whether

13 it's going to do it.  It's not like the Administrative

14 Conference where that is their whole function.  The board is

15 independent, and it decides whether it's going to provide

16 advice.

17         Another very significant difference between the

18 board and the Administrative Conference is that the

19 Administrative Conference advice function was sort of

20 internal, deliberative advice.  But Congress mandated that

21 when the board makes a recommendation to the President and

22 the President doesn't accept it, the board has to tell

23 Congress so that Congress can do something about it.  So

24 again, that's just completely inconsistent with the notion

25 that the whole purpose of the board is just to provide an

1    advice function.

2            *Severino* certainly did not hold that any agency

3    that has any sort of advice function to the President --

4    that that signals that Congress didn't intend to confer

5    removal protections.

6            THE COURT:  What about the argument that's made

7    that the PCLOB does not have any quasi-legislative or

8    adjudicative authority and, therefore, that distinguishes

9    PCLOB from the FTC, for example?

10           MS. THEODORE:  I think that is just obviously

11   incorrect, Your Honor.

12           So what *Humphrey's* said is that conducting

13   investigations and providing advice to Congress is a

14   quasi-legislative function, that is what serving as a

15   legislative agency is.  That is one of the main functions of

16   the PCLOB; that Congress often passed statutes that

17   specifically say:  PCLOB, we'd like you to do a report on X,

18   Y, or Z, and we cite a couple of examples of that in our

19   brief.

20           The 702 report is a report aimed at Congress that

21   Congress repeatedly relied on last time when it was

22   reauthorizing 702.  And just as an aside, it's not the case

23   that the 702 report this time is going to be the same as

24   last time.  As we explained in our brief, there were a

25   number of very significant changes, including the definition

1   of foreign intelligence information.  The last

2   reauthorization is going to require a very --

3             THE COURT:  So did Congress make a request of the

4   PCLOB to weigh in on what 702, the new -- the current

5   question of whether reauthorization should be ordered,

6   whether that should occur?

7             MS. THEODORE:  I am not sure Congress made a

8   specific request this time or not.  It certainly made -- it

9   has, in the past, made specific requests for the PCLOB to

10  issue reports about 702 and the 215 telephone metadata

11  program.  It's made specific requests to issue reports about

12  many other things.  That's clearly one of the major

13  functions of the PCLOB, is to provide advice in response to

14  specific requests from the Congress, which was not true of

15  the Administrative Conference.

16            THE COURT:  So you don't know why -- in reference

17  to the current question of reauthorization, why the PCLOB

18  felt it should provide information to Congress?

19            MS. THEODORE:  I would be happy to get that for

20  you.  I don't know specifically whether Congress made a

21  specific new request for this particular report.

22            I think that PCLOB has understood one of its very

23  significant functions is to be providing updated analysis of

24  702.  I know that members requested these reports.  I just

25  don't know if Congress passed a bill requesting a specific

1    update of the 702 report.  But again, in the past Congress

2    has very specifically requested those reports.  That's a

3    very significant function of the PCLOB.

4         The other thing I wanted to focus on is:  I didn't

5    hear any response from the government about the deletion of

6    the "serve at the pleasure" language; that is language that

7    said the President can remove at will.  Congress deleted

8    that language.

9         There is case after case after case that says that

10   a court is required, that it must give effect to textual

11   revisions and textual deletions, and it cannot simply

12   assume -- it cannot interpret a statute to reinsert language

13   that a Congress specifically deleted.  There was no response

14   to that.  They have no explanation for how you can possibly

15   interpret the statute to allow removal when a Congress

16   literally deleted the language specifically outlining

17   removal; and that also distinguishes this case from *Severino*

18   in a very significant way.

19        THE COURT:  Thank you.

20        Since you filed a cross motion, I will give you a

21   brief opportunity to respond to what's been indicated.

22        MS. HALL:  I will be brief, I promise.

23        First, to start with, the deletion of the "at the

24   pleasure of the President" language, it was -- I think we

25   certainly do contest that that should be read to mean that

1    there are restrictions on removal and that's, in part,

2    because of the background presumption on which Congress

3    legislates where Congress does not need to use particular

4    language, including the at-the-pleasure language in order to

5    confer the at-will removal power on the President.

6    Article II confers that power.

7         I think it's very reasonable to think that

8    Congress removes that language because it was redundant.

9    There is no reason for Congress to include it there because

10   it already existed.

11        THE COURT:  It included it initially.  They didn't

12   delete it until there were concerns expressed about what the

13   Bush Administration had done in reference to the first draft

14   report.

15        MS. HALL:  Well, that's true, Your Honor.  But

16   that means that Congress had every opportunity at that point

17   to impose a textual removal restriction like Congress was

18   doing at the same general time, for example with the PCAOB,

19   with the CFPB, H -- FHFA.

20        THE COURT:  You are saying the fact that they took

21   that language out is meaningless?

22        MS. HALL:  No, Your Honor.  I don't think it's

23   meaningless.  I think it was part of a statutory overhaul

24   where -- as our red-line indicates -- Congress was making a

25   really fundamental structural change to the nature of the

1    board; it was removing it from the Executive Office of the

2    President, which is very close to the President, as Congress

3    had witnessed immediately under the President's direct

4    supervision, and the type of supervision that occurs within

5    EOPE [sic] is very different from the type of supervision

6    that occurs across agencies.  That speaks, I think, to the

7    checks and balances point that counsel identified, which is

8    that here, rather than having kind of a board that is within

9    the Executive Office of the President, that is subject to

10   all of the different levels of control within the Executive

11   Office of the President you, instead, created an independent

12   agency, a freestanding agency within the executive branch

13   that can kind of go -- exists on the same plane as the

14   particular executive branch agency that it's advising.  So

15   it exists -- it's a freestanding agency like the Department

16   of Justice; it's a freestanding agency like the Federal

17   Trade Commission.  And it can speak to those agencies and

18   take those agencies as peers in a way, and be able to

19   request information from them, be able to build on that

20   information, and operate as a check by having kind of its

21   own personnel, its own structure, and to be able to control

22   its own existence.

23           Further, on the structure point, counsel

24   emphasized that the PCLOB has a similar board structure to

25   the Federal Trade Commission as in *Humphrey's Executor*.  I

1     would again point to *Collins v. Yellen.*  And in *Collins* the

2     Supreme Court lists a very long list of agencies, all of

3     which have very similar sorts of structures, at least some

4     of which have very similar sorts of structures, Your Honor.

5            The opinion talks about the nuclear Defense

6     Nuclear Facilities Safety Board, the Commodity Futures

7     Trading Commission, Farm Credit Administration, the National

8     Credit Union Administration and the Railroad Retirement

9     Board.

10           I would point Your Honor to the statutes in those

11    cases as well as evidence that the Supreme Court does not

12    understand just the structure of a multi-member board that

13    is partisan balanced to be sufficient to confer removal

14    restrictions.  These boards have very similar structures

15    and, yet, the Supreme Court concluded that they do not have

16    for-cause removal protections.  So the structure being

17    similar to the structure of the FTC in 1935 cannot be

18    dispositive here based on Supreme Court's holding -- Supreme

19    Court's reasoning in *Collins*.

20           As to the red-line and the removal of the advice

21    language that counsel identified, if you will give me just

22    one moment to pull that language.

23           So it certainly does remove the:  For the purpose

24    of providing advice to the President or to the head of any

25    department or agency of the executive branch.  But again, I

1      think that's because that language is redundant given the

2      rest of that section which discusses advising the President

3      and departments, agencies, and elements.

4              THE COURT:  I would assume that Congress

5      understood what redundancy means when they adopted the first

6      statute.  So I think to suggest that when they took language

7      out that you say was redundant the second time around that

8      that somehow was an appreciation that the second time around

9      it was redundant but they didn't appreciate that the first

10     time.

11             MS. HALL:  Well, Your Honor, I think any time

12     Congress is taking a second look at something that is

13     already enacted with how it's been used, I think --

14             THE COURT:  Don't you have to consider that in

15     context, I mean, and the underlying reason why they decided

16     to revamp the statute?

17             MS. HALL:  Your Honor, I do think that that is

18     absolutely true.  But I don't think that the context means

19     that at-will removal is incompatible with the structure and

20     function of the board; and that's the test from *Severino*.

21     *Severino* says that because of the constitutional backdrop

22     here:  Courts are not to imply removal restrictions where

23     they do not appear in the text unless it's abundantly clear

24     from the structure or function of the board that at-will

25     removal is incompatible with the statutory scheme.  And I

 1    just don't think the plaintiffs have cleared that bar here.

 2           We have a situation in *Severino* -- the Court

 3    emphasized that the only situation in which courts have

 4    found that that high bar for structure and function to

 5    demonstrate that a board or a commission is incompatible

 6    with at-will removal is when that board is exercising

 7    specific quasi-judicial or quasi-legislative

 8    responsibilities, and PCLOB does not do those things.

 9           PCLOB is an advice-giving board, it exists within

10    the executive branch.  It is very integrated with the

11    executive branch.  It can request information from all sorts

12    of parts of the executive branch, and it's able to advise

13    different parts of the executive branch.

14           And just to return to that last bit of amended

15    text, part of the reason I think that that text was removed

16    is it specifically says:  The head of any department or

17    agency.  In subsection (c), Congress revised the nature of

18    that provision to -- instead of saying:  Advise the

19    President and the head of any department or agency; instead,

20    it tasks PCLOB with advising the President and the

21    department's agencies and elements of the executive branch.

22    So it's not confined to agency heads, it's not confined to

23    just the top level.  It's tasked a little bit more broadly

24    with everyone in the executive branch, every element agency

25    and department, not just the heads of those agencies.  So

1    the other language which specifically refers to the heads of

2    agencies is being removed.

3              THE COURT:  Thank you.  Let me give the court

4    reporter a five-minute break, and we'll discuss the issue of

5    remedies.

6              (Whereupon, a recess was taken.)

7              THE COURT:  Let me ask one other question before

8    we move to the remedies portion.

9              What, if any, impact -- as my law clerk reminded

10    me.  In *Severino*, all of the members of the board there were

11    volunteers.  I would assume that would mean if they weren't

12    subject to appointment and confirmation by the Congress,

13    what, if any, impact does that have, as compared to what we

14    have as far as PCLOB is concerned, and how they are selected

15    to serve on the board?  Does that have any impact?

16              You can go first.

17              In *Severino*, they did emphasize that as a factor

18    in deciding that there was no restriction on the removal

19    power.

20              MS. THEODORE:  Yes, Your Honor.  I think that's

21    just another reason why the kind of agency at issue in

22    *Severino* was very, very different than the agency here.  The

23    agency here is just a traditional five-member --

24    multi-member expert board of the FTC.  Sort of whereas the

25    *Severino* agency -- the *Severino* decision specifically said

1    that precisely because so many of the appointees were just

2    people who were not confirmed by the Senate to the council

3    but, instead, just came over as a consequence of their other

4    positions in the executive branch, that the terms would not

5    be staggered.

6            And one thing I will also note is that one of the

7    other things that Congress did in 2007 was put in the prior

8    version of the statute only the chairman and the vice

9    chairman of the PCLOB were Senate confirmed.  And one of the

10   things they did in the 2007 revision was to make all of the

11   members Senate confirmed.  Again, just emphasizing the

12   importance of congressional participation in this.

13           THE COURT:  What about the fact that under the

14   revised statute there was a requirement that the members

15   have a certain expertise qualification on the board?

16           MS. THEODORE:  Yes.  Right.  That's another kind

17   of thing that the Supreme Court has pointed to, it's

18   indicative of the kind of structure that indicates the

19   intent to impose for-cause removal restrictions.  But again,

20   there are just so many differences of the statute in

21   *Severino* including very different contextual differences.

22           THE COURT:  Thank you.

23           MS. THEODORE:  I will also note that unlike in

24   *Severino*, here it's not just confirmation; but there is a

25   specific requirement in the statute that the President has

1    to consult with senators of the minority party on

2    appointments of members of the minority party.  Again,

3    nothing like that in the Administrative Conference statute,

4    as in *Severino*.

5              THE COURT:  Okay.  Any response to those

6    inquiries?

7              MS. HALL:  Yes, Your Honor.

8              The government certainly acknowledges that in the

9    Administrative Conference of the United States the members

10   are presidentially appointed rather than presidentially

11   appointed with Senate confirmation.  But the fact remains

12   that they are presidentially appointed, and the Supreme

13   Court and the D.C. Circuit have not traditionally

14   distinguished, in terms of the existence of at-will removal

15   between presidentially appointed and Senate-confirmed

16   official and, simply, a presidentially appointed official.

17   For example, the Attorney General, of course, is

18   presidentially appointed and Senate confirmed.  But I don't

19   think anyone contests that there is any kind of removal

20   restriction implied from the existence of Senate

21   confirmation there.

22             THE COURT:  Thank you.

23             MS. HALL:  Thank you.

24             THE COURT:  Okay.  We can move to the remedies

25   arguments.

1           MS. THEODORE:  Thank you, Your Honor.

2           The plaintiffs are entitled to reinstatement via

3    three avenues:  Via injunction, like the one specifically

4    authorized in *Severino*; under the APA; or via mandamus,

5    given the likelihood of an appeal on the remedy issue if we

6    were to prevail, we would respectfully ask the Court to rule

7    that we're entitled to relief under all three different

8    avenues.

9           So let me start with the injunction like the one

10   authorized in *Severino.*  *Severino* could not be more clear;

11   it's binding precedent that courts can enjoin agency

12   officials to treat an official as if he holds the opposite

13   issue and to confer on him the privileges of that office,

14   and that is just dispositive of the question here of whether

15   the plaintiffs are entitled to reinstatement.

16          The plaintiffs' argument on this topic is really

17   aimed at the Supreme Court.  They want the Supreme Court to

18   overrule *Severino* and hold that no relief is available.  But

19   for this Court's purpose, the rule is completely clear.  The

20   D.C. Circuit just reiterated that in the en banc decision

21   reinstating the reinstatement orders as to the officials of

22   the *Harris* and *Wilcox* cases.

23          I think the government's only response is that

24   *Severino* is a standing case.  That's precisely why it's

25   dispositive of the availability of an injunctive relief,

1    because the redressability prong of standing is, of course,

2    about remedy.  And the D.C. Circuit held that it could

3    redress *Severino's* termination because it could enjoin

4    agency officials to reinstate them.  Again, that is just a

5    clear holding that is dispositive.

6             In addition to an injunction, reinstatement is

7    also available through the APA and through mandamus.  So on

8    the APA, the Court should hold that they forfeited their

9    ability to dispute that reinstatement is available under the

10   APA.  The APA was the first count in our complaint, clearly

11   invoked it as an independent basis for relief and

12   reinstatement in our opening brief.  We did it -- that's at

13   page 36 or -- if you are using the ECF pagination, it's page

14   45.  We say that:  The APA independently authorizes the

15   specific legal relief being reinstatement.  We quoted from

16   5 U.S.C. 706.

17            They had a full opportunity to respond in their

18   response brief, and they didn't.  The ordinary rules of

19   waiver should apply to the government, and they should be

20   held to have waived any objection to the APA count.  Again,

21   it was the first count in our complaint; and they don't

22   address it at all in their motion.

23            So waiver aside, even in the reply brief they

24   don't even dispute that the APA provides courts with the

25   specific legal authority to set aside the terminations and

1    compel reinstatement.

2            As part of the authority under 5 U.S.C. 706, the

3    only thing they say is that there isn't agency action here.

4    Again, the APA agency action requirement is

5    nonjurisdictional under D.C. Circuit precedent and clearly

6    waivable.  And the fact that they didn't raise it until

7    their reply brief means they've waived it.  But in any

8    event, there is clearly agency action here.

9            The President wasn't the one who terminated the

10   plaintiffs' access to the electronic systems or took them

11   off the website, or made it so that they couldn't enter the

12   building anymore; the agency officials did that.  Plaintiffs

13   received emergency communications effectuating the

14   termination from agency officials.  And *Severino's* holding

15   that --

16           THE COURT:  I assume that was done at the behest

17   of the President, so does that make a difference?

18           MS. THEODORE:  I don't think so, Your Honor.  It's

19   no different than when the President issues an executive

20   order that results in agencies doing things, which happens

21   all the time.  Courts aren't unable to review what the

22   agencies do pursuant to an executive order under the APA

23   because the President has issued an executive order.  If the

24   agency acts, the courts can review it under the APA

25   regardless of whether the action was directed by the

1    President.

2         Again, that's also very clearly what the

3    D.C. Circuit held in *Severino*; not in the APA context, but

4    in the context of an injunction with respect to

5    reinstatement.  The whole premise of the D.C. Circuit's

6    holding that you could get relief by enjoining agency

7    officials to treat you as if you are a member of the board

8    necessarily requires that there was agency action that's

9    affecting whether you are a member of the board.  So the

10   D.C. Circuit's opinion in *Severino* saying that you can get

11   effective relief by ordering the agency officials to treat

12   you as if you are reinstated means that there is agency

13   action at issue here.

14        In addition, I mean, we have put in very

15   significant evidence that has not been meaningfully disputed

16   that there was agency action here; that the defendant Beth

17   Williams ordered agency officials to carry out the

18   terminations.  And I think that -- there has been no

19   responsive declarations saying that that is not true,

20   because it is true.

21        Okay.  So then the third -- the third form of

22   relief that's available here is mandamus.  And the Supreme

23   Court held in the *Sawyer* case that courts have jurisdiction

24   to determine title to public office via mandamus; *Marbury v.*

25   *Mattison* quite clearly held that if you have a right to hold

1    an office that a court can issue mandamus to require

2    reinstatement to that office.  And then the recent

3    D.C. Circuit en banc decision in the *Harris* and *Wilcox* cases

4    refers to Judge Millett's decision on remedy at the panel

5    stage in those cases, where she talks about mandamus as an

6    additional avenue for relief in that case.  So those are the

7    three independent reasons why we're entitled to

8    reinstatement.

9           I will briefly address the backpay argument.  The

10   government argues that the purported availability of backpay

11   precludes reinstatement, and that's wrong for multiple

12   reasons.

13          THE COURT:  Are they entitled to --

14          MS. HALL:  Well, that's one of the reasons.  We

15   are not entitled to backpay.

16          The government, notably, has not provided any

17   statute that would authorize us to get backpay.  The

18   relevant statute says that board members may only be

19   performed -- may only be paid for hours or days during which

20   the members engaged in the, quote, "actual performance of

21   the duties of the board."

22          I think a lot of agencies -- a lot of employees

23   can rely on the Back Pay Act, but the government hasn't

24   invoked that here.  And that's because it wouldn't apply

25   here because it has a specific exception for people who hold

1    day jobs that pay more than their part-time government jobs.

2    So what it says is that someone who is terminated is only

3    entitled to what they would have earned from their

4    government job during the period of termination less what

5    they earned from any other employment during that period of

6    termination.  And here that would be negative because these

7    are part-time board members, and both of the plaintiffs earn

8    more money from their other jobs than they would have earned

9    from their board jobs.  So the Back Pay Act does not entitle

10   them to any relief at all.  And again, the government hasn't

11   suggested that it does.

12              THE COURT:  Okay.

13              MS. THEODORE:  So that's one reason here, is that

14   the plaintiffs are not entitled to backpay; that's why we

15   took it out of the complaint, because they're not entitled

16   to it.  That's an independent reason why reinstatement is

17   the only possible remedy.

18              Even if the plaintiffs were entitled to backpay, I

19   think courts have routinely recognized that it's just not an

20   adequate remedy in this kind of case.  Injury here is that

21   the plaintiffs are unable to perform the duties for which

22   they were confirmed by Congress and, also, that the

23   termination s have deprived the board of a quorum to perform

24   its critical functions, and backpay wouldn't address any of

25   that.  I think no --

1          THE COURT:  I don't think you have to go there.  I

2     don't see how I could reach a conclusion that they would be

3     entitled to backpay because, since they only are entitled to

4     remuneration for actual services they perform, I would have

5     to speculate, it seems to me, somehow they would have

6     performed X amount of hours and, therefore, be entitled to Y

7     amount of pay.  I don't see how I could speculate on that.

8          MS. THEODORE:  Okay.  I will just also note that

9     all of the recent cases, like the *Harris* and the *Wilcox*

10    cases, specifically held that backpay -- even in a case

11    where you might be entitled to it isn't an adequate remedy

12    in this context.  The reality is, I think, as everyone

13    knows, backpay is not an effective remedy here.  I mean, if

14    backpay were all people could get, then the President would

15    be able to just illegally terminate people at will, even in

16    cases where there were -- with the most explicit statutory

17    protection that you can imagine.

18          THE COURT:  Thank you.

19          MS. THEODORE:  Thanks.

20          THE COURT:  Response?

21          MS. HALL:  Thank you, Your Honor.

22          As to remedy here, as we lay out in our

23    briefing --

24          THE COURT:  Do you disagree with my position

25    regarding backpay?  That there would be no basis for me to

1    award backpay and, therefore, that wouldn't be an available

2    remedy, as I said, because it seems to me I would have to

3    wildly speculate that they would have put in X amount of

4    time and, therefore, they would be entitled to Y amount of

5    funds?

6              MS. HALL:  Well, Your Honor, I think the first

7    reason that it would be improper to award backpay here is

8    because plaintiffs haven't asked for it and they decided to

9    remove it from their complaint.  So their election not to

10   pursue backpay --

11             THE COURT:  It's a nonissue, I think.  Right?

12             MS. HALL:  Sure.  I do think that there is no

13   question of whether Your Honor should award backpay here

14   because plaintiffs haven't sought it; they haven't gone

15   through the particular procedures of the Back Pay Act, and

16   so we have not teed up the particular legal issues regarding

17   backpay.

18             I certainly would not suggest that Your Honor --

19   if you rule for us on -- rule for the plaintiffs, rather, on

20   the merits, should issue a backpay award here.  That's not

21   in dispute.

22             THE COURT:  What about their waiver argument

23   regarding the APA?

24             MS. HALL:  Your Honor, I don't think that we

25   waived an argument under the APA because we asserted in our

1    brief that, under any conception of the Court's

2    reinstatement order, whether it's based on injunctive

3    relief, whether it's based on the APA, or based on mandamus,

4    it would exceed the bounds of Article III and the separation

5    of powers.  I think we have made clear that reinstatement is

6    improper because it is the President's prerogative alone to

7    make appointments under the Constitution and so the Court is

8    not in a position to exercise the appointment authority

9    which belongs in Article II, not in Article III.

10            THE COURT:  Are you saying that a court never has

11    the authority under any circumstances to order reinstatement

12    of an employee if it's determined that that employee was

13    wrongfully terminated?

14            MS. HALL:  Your Honor, specifically with regard to

15    officers of the United States.  That's not something that I

16    am arguing as to any employee ever, certainly the case law

17    does not bear that out.

18            But specifically with respect to separation of

19    powers concerns that are at play when it comes to a

20    principal officer of the United States, those are different

21    concerns; and the Constitution specifically vests the

22    appointment of principal officers in the President and the

23    President alone.  Congress cannot give any other entity the

24    authority to appoint a principal officer.  And so any --

25            THE COURT:  So are you saying there's never been a

1    situation where somebody who has an analogous situation to

2    the PCLOB members who has ever been ordered to be reinstated

3    after having been terminated?

4              MS. HALL:  Well, Your Honor, certainly, in the

5    last several months there have been many cases where courts

6    in this district have issued reinstatement orders, but it is

7    the government's position that those reinstatement orders

8    were unlawful.  I will point out --

9              THE COURT:  Theoretically -- I am not saying this

10   is the case.  What if you had a blatant violation of a law

11   that resulted in a person in an analogous situation being

12   terminated?  Are you saying they have no remedy whatsoever?

13             You are saying they wouldn't have a right to

14   backpay, and they wouldn't have a right to reinstatement.

15   So, I guess, they would have a right without a remedy?

16             MS. HALL:  Well, Your Honor, in some circumstances

17   they might have backpay depending on the particulars of the

18   individual case, so I think that's our position.

19             It's not that there is necessarily no remedy; but

20   that the specifically requested remedy of reinstatement,

21   which is effectively the judicial exercise of the

22   appointment authority which belongs to the President under

23   Article II, and the President alone, would be improper.

24             THE COURT:  Let's make it directly related to what

25   we have here.

1          If someone only -- who is a part-time employee

2     only gets paid for when they actually perform services and

3     if it was clear that they were wrongfully terminated, you

4     are saying that somebody in that capacity really doesn't

5     have any remedy because they wouldn't be able to get

6     backpay; you argue that.  On the other hand, you say they

7     wouldn't be entitled to reinstatement.  So they'd have a

8     right without a remedy?

9          MS. HALL:  Well, Your Honor, sometimes Congress

10     does act to restrict the availability of particular

11     remedies.

12          I think that, in the circumstance of backpay,

13     Congress has enacted several statutes that provide a very

14     particular scheme for when the government's sovereign

15     immunity is waived to allow for awards of backpay.  And the

16     Congress's decision to enact very particular regulations of

17     when backpay is available and when it isn't available,

18     doesn't undermine the historical fact that backpay is a

19     traditional remedy for officers who are removed from office.

20          THE COURT:  Okay.  Anything else?

21          MS. HALL:  Your Honor, just as to the substance of

22     our arguments here, as I mentioned, we -- it is our view

23     that reinstatement would violate the separation of powers

24     because only the President is vested with appointment

25     authority under the Constitution; true for principal

 1   officers.  And the plaintiffs are undoubtedly principal

 2   officers.

 3           Furthermore, courts' injunctive authority is

 4   limited to traditional equitable remedies, and reinstatement

 5   of principal officers is not a traditional equitable remedy.

 6           I would also point Your Honor's attention to --

 7   plaintiffs' counsel repeatedly referred to the

 8   D.C. Circuit's en banc opinion in *Harris* and *Wilcox*, but

 9   that decision and the judgment there is currently

10   administratively stayed by the U.S. Supreme Court; that case

11   was fully briefed about two weeks ago.  So I would be

12   surprised if a decision is not forthcoming relatively

13   quickly, so I would certainly point Your Honor's attention

14   there.  And if an opinion comes out before Your Honor rules,

15   we will certainly share that with the Court.

16           But I think that any reliance on the

17   D.C. Circuit's en banc decision in *Harris* and *Wilcox* would

18   be inappropriate because that decision has been

19   administratively stayed by the U.S. Supreme Court and a

20   decision there is forthcoming.  And I think that that will

21   be very relevant to the disposition of the reinstatement

22   question, or at least may be relevant to the disposition of

23   that question.

24           Furthermore, the decision in *Dellinger* by the

25   D.C. Circuit on March 10 -- the D.C. Circuit order on that

1    date rejected the sorts of irreparable harm arguments based

2    on a statutory right to hold office or an agency interest in

3    fulfilling its functions the plaintiffs' identify here.

4           So I would also point Your Honor's attention -- we

5    include this in our briefing, but the *Dellinger* order -- the

6    March 10 order by the D.C. Circuit makes clear that those

7    are not proper bases for irreparable harm that would justify

8    injunctive relief.

9           Finally, as to mandamus, mandamus is reserved for

10   situations where the right to relief is clear and

11   indisputable, and it is a discretionary remedy in any event.

12   Given the particular separation of powers concerns with

13   exercising the appointment power and given the -- at the

14   very least difficult question of the proper interpretation

15   of the statute which -- for the reasons that we have

16   identified in our brief, we think that this is a simple

17   question of statutory interpretation because there is no

18   protection against at-will removal, and that is the

19   constitutional and statutory backdrop on which Congress

20   legislated.

21          Even if Your Honor disagrees, I think it is a very

22   difficult question if it goes the other way.  And so I don't

23   think that it would be proper to hold that the plaintiffs

24   have a clear and indisputable right to relief or that the

25   sorts of activities that Your Honor would be enjoining

```
1    defendants to engage in are simply ministerial.  This would

2    be reappointment of a principal officer of the

3    United States; those are not ministerial duties.  So for

4    those reasons, Your Honor, we think that mandamus is further

5    inappropriate here.

6              THE COURT:  Thank you.

7              MS. HALL:  Thank you, Your Honor.

8              THE COURT:  Let me just ask plaintiffs' counsel.

9              Regarding the injunctive relief that you are

10   requesting and one of the requirements, obviously, to be

11   entitled to that is irreparable harm, how -- I mean, you

12   sort of make a novel argument as to why the members would

13   suffer irreparable harm; but is that a correct position to

14   take?

15             MS. THEODORE:  Yes, Your Honor.

16             THE COURT:  Sort of like somewhat analogous, I

17   guess, to standing.  I mean, how can they show that they are

18   somehow harmed if they're not because -- one argument can be

19   made that they can't weigh in to assist Congress in

20   reference to its 702 reauthorization issue; how are they

21   harmed by that?

22             MS. THEODORE:  They are harmed because they were

23   appointed to a Senate-confirmed position that confers

24   specific duties on them, they have a property right to that

25   position.
```

1          If Your Honor agrees with us that the President

2     doesn't have termination at-will authority, they have a

3     property right to that position under cases that we have

4     cited in our brief that the government hasn't responded to.

5     I think more generally, Your Honor, I think, frankly,

6     *Marbury v. Madison* decides this.

7          It very clearly says that -- the officer at issue

8     in *Marbury v. Madison* was presidentially appointed and

9     Senate confirmed.  And the court said that if the President

10    was required to deliver the commission to him, he had a

11    right to the remedy of getting his commission; and it

12    specifically rejected the notion that there was some

13    monetary value to the office that could be a remedy instead.

14    It said that he had a right to delivery of his commission

15    and he had a right via mandamus to the delivery of that

16    commission.  So that, I think, also rejects the government's

17    argument that there's been no case that holds that a

18    principal officer can be reinstated.

19         I think there are also a number of recent cases in

20    which the Supreme Court has specifically recognized that

21    government officials have a right to reinstatement in

22    appropriate circumstances.  So in the *Vitarelli v. Seaton*

23    case, the Supreme Court affirmed an injunction reinstating

24    an official to their office; that person wasn't a principal

25    officer, but with respect to the irreparable harm question,

1    I don't think that it matters.  The point is that the

2    official has a right and has a significant interest in

3    performing the duties, performing the job that they have

4    been allowed to perform.  And I think -- as I mentioned also

5    in the *Harris* and *Wilcox* decisions, I would point Your Honor

6    to those -- the court recognized that reinstatement was an

7    available remedy.

8            Finally, again, *Severino* just decides this issue.

9    *Severino* explicitly says that reinstatement is a remedy to

10   which somebody is entitled when they have been removed,

11   including by the President.  I didn't hear any response to

12   that.  The government just wants you to overrule *Severino*

13   which, of course, you know you can't do.

14           I do want to talk a little bit more about the

15   principal officer argument.  They do not have a single case

16   in history saying -- from the Supreme Court saying that

17   reinstatement isn't available for principal officers; they

18   just don't.  There are a number of cases where backpay was

19   the remedy that was requested, including in a number of

20   cases because there was a reinstatement request that became

21   moot by the time it got to the Supreme Court.  But none of

22   the cases they cite from the Supreme Court say that

23   reinstatement is not an available remedy.  They have noted

24   that a lot of our Supreme Court cases, like *Vitarelli*

25   *v. Seaton* and *Webster v. Doe*, don't involve principal

1    officers.  But all of the cases that they rely on to say

2    that reinstatement wasn't available in courts of equity,

3    like in 1880, those -- none of those involve principal

4    officers either.

5            So their theory is, like, we have a bunch of cases

6    predating the merger of law and equity that didn't involve

7    principal officers that say that courts of equity can't

8    reinstate.  But your cases postdating the merger of law and

9    equity that states that courts can reinstate don't count

10   because they don't involve principal officers, and that just

11   doesn't work.

12           Finally, on the APA, I think counsel said that

13   it's not waived because they had a broad statement saying

14   that we weren't entitled to reinstatement.  There is no,

15   like, implied preservation.  We offered a specific argument

16   under a specific statute that has specific terms where

17   Congress has specifically authorized courts to compel agency

18   action unlawfully withheld, they just had no response to it,

19   and they certainly didn't make the agency action argument

20   that they have made in their reply brief; and so it's

21   waived.

22           Finally, on mandamus, I think counsel argued that

23   we wouldn't be able to get mandamus because the statute

24   can't be clear and indisputable even if you agree with us.

25   I think that's just a misconception of what it means to be

1    clear and indisputable for purposes of mandamus.

2            I would point Your Honor to the *Swan* decision

3    where the court specifically says:  The question for

4    mandamus isn't whether the legal interpretation is

5    disputable.  Once the court has reached a conclusion about

6    what the law requires, then mandamus is appropriate if the

7    agency officials to whom the mandamus would be directed

8    would be carrying out ministerial duties, which they would

9    be here.  If the Court determines that we're correct, the

10   Court can simply tell the agency officials that they have to

11   reinstate.

12           THE COURT:  It's been a long time since I read

13   *Marbury*.  What was the legal mechanism that the court

14   employed there to reinstate, was it injunction?

15           MS. THEODORE:  It was mandamus.

16           So what the court said was that the official had a

17   right to his office; that part of the case was, I think,

18   undisputed.  And then it said -- what was disputed was

19   whether he can get a remedy.  The court said:  Congress

20   authorized us to order delivery of the commission via

21   mandamus, and he has a right to that remedy; but Congress

22   can't authorize us to do that via this particular statute

23   because it's not within the original jurisdiction under

24   Article III and, of course, that's the main holding of

25   *Marbury*.

1          But the principal point that is relevant here is

2     that the Supreme Court expressly said that if Congress

3     authorizes mandamus which, here, Congress has done for this

4     court under the All Writs Act, that mandamus is an

5     appropriate remedy for reinstatement of a principal officer.

6          THE COURT:  Thank you.

7          I will get you an opinion as quickly as I can.  We

8     will try and do it expeditiously.  Thank you.

9          (Whereupon, the proceeding concludes, 3:33 p.m.)

10                          *  *  *  *  *

11                          **CERTIFICATE**

12

13          I, ELIZABETH DAVILA, RPR, FCRR, do hereby certify

14     that the foregoing constitutes a true and accurate

15     transcript of my stenographic notes, and is a full, true,

16     and complete transcript of the proceedings to the best of my

17     ability.

18          This transcript is work product.

19          This certificate shall be considered null and void

20     if the transcript is distributed, disassembled, and/or

21     photocopied in any manner by any party without authorization

22     of the signatory below.

23

24          Dated this 5th day of June, 2025.

25          /s/ Elizabeth Davila, RPR, FCRR
           Official Court Reporter

**/**

**/s** [1] - 65:25

**1**

**10** [2] - 58:25, 59:6
**100** [1] - 7:6
**18-1** [1] - 34:8
**1880** [1] - 63:3
**1935** [1] - 41:17

**2**

**2** [1] - 34:8
**20001** [1] - 1:14
**2000ee** [1] - 28:17
**2000ee(d)(2)** [1] - 29:22
**2000ee-1** [1] - 10:22
**2007** [6] - 5:21, 8:4, 18:12, 34:9, 45:7, 45:10
**202** [2] - 1:14, 1:19
**2025** [2] - 1:4, 65:24
**20530** [1] - 1:19
**215** [1] - 37:10
**25-542** [2] - 1:3, 2:3
**2:02** [1] - 1:5

**3**

**30** [1] - 1:4
**307-6482** [1] - 1:19
**36** [1] - 48:13
**3:33** [1] - 65:9

**4**

**403** [1] - 9:20
**404** [1] - 10:1
**45** [1] - 48:14

**5**

**5** [4] - 9:20, 10:1, 48:16, 49:2
**5th** [1] - 65:24

**6**

**601** [2] - 1:13, 1:18

**7**

**702** [14] - 23:7, 23:12, 24:2, 24:10, 24:13, 24:17, 36:20, 36:22, 36:23, 37:4, 37:10, 37:24, 38:1, 60:20

**706** [2] - 48:16, 49:2

**9**

**9/11** [3] - 14:8, 14:10, 15:21
**90** [1] - 7:16
**942-5891** [1] - 1:14

**A**

**ability** [4] - 3:14, 9:10, 48:9, 65:17
**able** [10] - 15:4, 28:11, 28:14, 40:18, 40:19, 40:21, 43:12, 53:15, 57:5, 63:23
**absolutely** [1] - 42:18
**abundantly** [1] - 42:23
**abuse** [1] - 10:3
**accept** [1] - 35:22
**access** [1] - 49:10
**accurate** [2] - 18:22, 65:14
**acknowledges** [1] - 46:8
**act** [3] - 3:2, 10:9, 57:10
**Act** [4] - 51:23, 52:9, 54:15, 65:4
**action** [9] - 49:3, 49:4, 49:8, 49:25, 50:8, 50:13, 50:16, 63:18, 63:19
**Action** [2] - 1:2, 2:3
**actions** [3] - 30:1, 30:4, 35:4
**activities** [4] - 13:19, 13:20, 19:14, 59:25
**activity** [1] - 24:19
**acts** [2] - 24:14, 49:24
**actual** [4] - 9:1, 32:12, 51:20, 53:4
**addition** [4] - 33:11, 34:22, 48:6, 50:14
**additional** [1] - 51:6
**address** [6] - 7:10, 9:7, 15:21, 48:22, 51:9, 52:24
**adequate** [2] - 52:20, 53:11
**adequately** [1] - 16:11
**adjudication** [3] - 22:10, 22:13, 22:18
**adjudicative** [1] - 36:8
**Administration** [4] - 18:14, 39:13, 41:7, 41:8
**administration** [4] - 8:22, 14:20, 15:20,

18:15
**administration's** [1] - 20:25
**administrative** [3] - 15:4, 30:24, 31:5
**Administrative** [14] - 12:17, 15:9, 30:10, 30:12, 30:19, 32:25, 33:23, 33:25, 35:13, 35:18, 35:19, 37:15, 46:3, 46:9
**administratively** [2] - 58:10, 58:19
**adopted** [1] - 42:5
**advice** [43] - 10:15, 13:24, 14:3, 14:6, 16:5, 17:3, 17:6, 17:8, 17:10, 17:11, 17:12, 17:15, 17:18, 18:9, 27:18, 28:2, 30:15, 31:19, 31:20, 34:1, 34:6, 34:11, 34:12, 34:14, 34:17, 34:18, 34:21, 35:1, 35:6, 35:8, 35:9, 35:11, 35:16, 35:19, 35:20, 36:1, 36:3, 36:13, 37:13, 41:20, 41:24, 43:9
**advice-giving** [2] - 16:5, 43:9
**advise** [4] - 14:25, 15:5, 43:12, 43:18
**advising** [14] - 14:23, 15:10, 15:11, 15:12, 16:9, 17:4, 22:24, 23:1, 23:2, 40:14, 42:2, 43:20
**advisor** [1] - 24:25
**advisors** [1] - 17:18
**advisory** [7] - 14:22, 18:8, 18:9, 27:24, 29:5, 29:7
**affecting** [1] - 50:9
**affiliation** [4] - 5:25, 16:19, 20:7, 20:12
**affiliations** [2] - 5:23, 33:20
**affirmatively** [1] - 11:9
**affirmed** [1] - 61:23
**AFIS** [1] - 23:4
**afternoon** [6] - 2:9, 2:11, 2:12, 2:15, 2:22, 12:8
**agencies** [20] - 9:18, 19:6, 29:1, 30:24, 31:5, 31:20, 34:2, 35:11, 40:6, 40:17, 40:18, 41:2, 42:3, 43:21, 43:25, 44:2,

49:20, 49:22, 51:22
**agency** [54] - 7:20, 7:23, 8:7, 9:5, 9:22, 10:4, 10:18, 10:23, 10:24, 10:25, 16:5, 23:15, 27:16, 28:18, 31:23, 32:19, 32:21, 32:22, 34:13, 36:2, 36:15, 40:12, 40:14, 40:15, 40:16, 41:25, 43:17, 43:19, 43:22, 43:24, 44:21, 44:22, 44:23, 44:25, 47:11, 48:4, 49:3, 49:4, 49:8, 49:12, 49:14, 49:24, 50:6, 50:8, 50:11, 50:12, 50:16, 50:17, 59:2, 63:17, 63:19, 64:7, 64:10
**agenda** [3] - 19:17, 19:18, 19:23
**aggressive** [2] - 15:20, 15:22
**aggressiveness** [2] - 14:9, 14:11
**ago** [3] - 7:6, 24:10, 58:11
**agree** [2] - 29:8, 63:24
**agrees** [3] - 6:9, 11:11, 61:1
**aided** [1] - 1:25
**aimed** [2] - 36:20, 47:17
**al** [4] - 1:2, 1:6, 2:3, 2:5
**allow** [5] - 7:17, 8:18, 38:15, 57:15
**allowed** [1] - 62:4
**alone** [3] - 55:6, 55:23, 56:23
**amended** [1] - 43:14
**amendments** [1] - 34:9
**America** [2] - 15:16, 31:10
**American** [5] - 14:13, 15:18, 15:24, 18:1, 23:19
**amount** [4] - 53:6, 53:7, 54:3, 54:4
**analogous** [4] - 30:17, 56:1, 56:11, 60:16
**analysis** [6] - 24:11, 25:13, 27:15, 27:23, 28:2, 37:23
**analyze** [1] - 35:4
**analyzed** [1] - 21:20
**analyzing** [1] - 35:7
**AND** [1] - 1:5
**APA** [16] - 47:4, 48:7,

48:8, 48:10, 48:14, 48:20, 48:24, 49:4, 49:22, 49:24, 50:3, 54:23, 54:25, 55:3, 63:12
**apologize** [1] - 3:5
**appeal** [1] - 47:5
**appear** [2] - 20:20, 42:23
**appearance** [1] - 2:7
**APPEARANCES** [1] - 1:10
**applicable** [1] - 24:11
**applied** [1] - 7:22
**applies** [2] - 27:24, 28:21
**apply** [3] - 28:19, 48:19, 51:24
**appoint** [1] - 55:24
**appointed** [8] - 46:10, 46:11, 46:12, 46:15, 46:16, 46:18, 60:23, 61:8
**appointees** [3] - 17:5, 32:23, 45:1
**appointment** [6] - 44:12, 55:8, 55:22, 56:22, 57:24, 59:13
**appointments** [4] - 5:24, 17:16, 46:2, 55:7
**appreciate** [1] - 42:9
**appreciation** [1] - 42:8
**approach** [2] - 2:6, 5:18
**appropriate** [4] - 5:17, 61:22, 64:6, 65:5
**appropriately** [2] - 3:8, 35:6
**April** [1] - 1:4
**argue** [2] - 11:9, 57:6
**argued** [1] - 63:22
**argues** [1] - 51:10
**arguing** [5] - 5:2, 7:3, 20:24, 26:9, 55:16
**argument** [17] - 6:14, 7:10, 9:8, 11:7, 25:10, 25:15, 36:6, 47:16, 51:9, 54:22, 54:25, 60:12, 60:18, 61:17, 62:15, 63:15, 63:19
**arguments** [4] - 11:4, 46:25, 57:22, 59:1
**Arnold** [1] - 1:13
**article** [1] - 8:25
**Article** [9] - 20:18, 22:15, 28:7, 39:6, 55:4, 55:9, 56:23, 64:24

**aside** [3] - 36:22, 48:23, 48:25
**aspect** [1] - 34:3
**assert** [1] - 25:10
**asserted** [1] - 54:25
**assessment** [1] - 23:21
**assist** [1] - 60:19
**assistance** [1] - 23:12
**associated** [1] - 16:14
**assume** [5] - 9:2, 38:12, 42:4, 44:11, 49:16
**assumed** [2] - 5:4, 8:1
**at-the-pleasure** [1] - 39:4
**at-will** [10] - 7:17, 19:1, 26:16, 39:5, 42:19, 42:24, 43:6, 46:14, 59:18, 61:2
**attached** [2] - 9:1, 34:8
**attempt** [3] - 12:11, 16:16, 16:24
**attention** [3] - 58:6, 58:13, 59:4
**attest** [1] - 31:23
**Attorney** [1] - 46:17
**Attorney's** [1] - 1:17
**auditors** [1] - 10:2
**authorities** [1] - 3:7
**authority** [22] - 6:16, 13:9, 13:13, 14:18, 15:1, 16:1, 19:9, 19:12, 20:18, 21:8, 21:16, 22:19, 36:8, 48:25, 49:2, 55:8, 55:11, 55:24, 56:22, 57:25, 58:3, 61:2
**authorization** [2] - 1:22, 65:21
**authorize** [2] - 51:17, 64:22
**authorized** [4] - 47:4, 47:10, 63:17, 64:20
**authorizes** [2] - 48:14, 65:3
**availability** [3] - 47:25, 51:10, 57:10
**available** [11] - 47:18, 48:7, 48:9, 50:22, 54:1, 57:17, 62:7, 62:17, 62:23, 63:2
**Avenue** [1] - 1:13
**avenue** [1] - 51:6
**avenues** [2] - 47:3, 47:8
**avoidance** [4] - 11:7, 11:18, 11:25, 25:9
**award** [4] - 54:1, 54:7,

54:13, 54:20
**awards** [1] - 57:15
**aware** [3] - 8:21, 8:24, 9:4

**B**

**backdrop** [2] - 42:21, 59:19
**background** [2] - 7:19, 39:2
**backpay** [26] - 51:9, 51:10, 51:15, 51:17, 52:14, 52:18, 52:24, 53:3, 53:10, 53:13, 53:14, 53:25, 54:1, 54:7, 54:10, 54:13, 54:17, 54:20, 56:14, 56:17, 57:6, 57:12, 57:15, 57:17, 57:18, 62:18
**bad** [1] - 18:4
**balance** [8] - 3:24, 5:22, 26:12, 26:18, 26:20, 26:23, 35:1, 35:2
**balanced** [2] - 3:8, 41:13
**balances** [1] - 40:7
**banc** [4] - 47:20, 51:3, 58:8, 58:17
**bar** [2] - 43:1, 43:4
**based** [30:16, 41:18, 55:2, 55:3, 59:1
**bases** [1] - 59:7
**basis** [4] - 10:13, 25:13, 48:11, 53:25
**bear** [1] - 55:17
**bears** [1] - 32:12
**became** [3] - 8:21, 8:24, 62:20
**BEFORE** [1] - 1:8
**beginning** [2] - 2:7, 34:23
**behalf** [4] - 2:10, 2:13, 2:22, 24:6
**behest** [1] - 49:16
**beholden** [2] - 3:10, 22:16
**believes** [1] - 20:21
**belongs** [2] - 55:9, 56:22
**below** [1] - 65:22
**benefit** [1] - 34:1
**best** [2] - 17:25, 65:16
**Beth** [1] - 50:16
**better** [1] - 15:5
**between** [2] - 35:17, 46:15

**big** [1] - 31:22
**bill** [1] - 37:25
**binding** [1] - 47:11
**bipartisan** [3] - 17:11, 25:21, 33:3
**bit** [5] - 28:7, 31:1, 43:14, 43:23, 62:14
**blatant** [1] - 56:10
**BOARD** [1] - 1:6
**board** [82] - 3:9, 3:19, 3:23, 8:12, 9:2, 10:25, 11:13, 12:21, 12:22, 14:1, 14:7, 14:14, 14:16, 14:17, 14:22, 15:14, 15:25, 16:14, 16:20, 17:4, 18:9, 18:21, 19:2, 19:10, 19:13, 19:14, 19:15, 20:19, 21:3, 21:7, 21:9, 21:23, 24:7, 24:9, 24:14, 24:15, 25:10, 25:20, 25:21, 26:3, 26:5, 27:17, 27:25, 29:12, 30:8, 31:15, 33:3, 33:19, 33:20, 34:14, 34:20, 35:4, 35:8, 35:11, 35:12, 35:14, 35:18, 35:21, 35:22, 35:25, 40:1, 40:8, 40:24, 41:12, 42:20, 42:24, 43:5, 43:6, 43:9, 44:10, 44:15, 44:24, 45:15, 50:7, 50:9, 51:18, 51:21, 52:7, 52:9, 52:23
**Board** [10] - 2:4, 2:25, 12:16, 13:22, 13:24, 16:7, 24:5, 34:23, 41:6, 41:9
**board's** [6] - 8:13, 8:16, 27:18, 29:23, 34:17, 35:9
**boards** [2] - 12:16, 12:17, 26:13, 26:17, 26:25, 41:14
**bounds** [1] - 55:4
**branch** [40] - 3:6, 3:10, 10:16, 13:25, 14:10, 14:24, 15:11, 16:8, 16:9, 17:5, 23:2, 23:16, 25:1, 27:19, 28:15, 28:17, 28:19, 29:25, 30:5, 30:14, 30:15, 30:23, 31:5, 31:20, 32:23, 33:1, 33:19, 34:1, 34:13, 35:5, 40:12, 40:14, 41:25, 43:10, 43:11, 43:12, 43:13, 43:21,

43:24, 45:4
**break** [1] - 44:4
**brief** [15] - 6:24, 7:11, 9:8, 36:19, 36:24, 38:21, 38:22, 48:12, 48:18, 48:23, 49:7, 55:1, 59:16, 61:4, 63:20
**briefed** [1] - 58:11
**briefing** [2] - 53:23, 59:5
**briefly** [2] - 11:7, 51:9
**broad** [2] - 31:24, 63:13
**broadly** [2] - 33:22, 43:23
**build** [1] - 40:19
**building** [1] - 49:12
**bunch** [1] - 63:5
**Bush** [3] - 8:22, 18:14, 39:13

**C**

**CALEB** [1] - 1:12
**cannot** [8] - 3:9, 4:1, 15:12, 33:4, 38:11, 38:12, 41:17, 55:23
**capable** [1] - 24:23
**capacity** [1] - 57:4
**carry** [2] - 29:13, 50:17
**carrying** [1] - 64:8
**case** [33] - 4:22, 4:25, 5:3, 5:5, 5:13, 5:19, 7:3, 12:9, 12:25, 21:5, 21:21, 22:1, 23:10, 27:7, 36:22, 38:9, 38:17, 47:24, 50:23, 51:6, 52:20, 53:10, 55:16, 56:10, 56:18, 58:10, 61:17, 61:23, 62:15, 64:17
**cases** [19] - 6:16, 22:6, 41:11, 47:22, 51:3, 51:5, 53:9, 53:10, 53:16, 56:5, 61:3, 61:19, 62:18, 62:20, 62:22, 62:24, 63:1, 63:5, 63:8
**certain** [1] - 45:15
**certainly** [17] - 9:3, 13:14, 25:22, 26:3, 29:19, 31:13, 36:2, 37:8, 38:25, 41:23, 46:8, 54:18, 55:16, 56:4, 58:13, 58:15, 63:19
**CERTIFICATE** [1] - 65:11

**certificate** [1] - 65:19
**certify** [1] - 65:13
**CFPB** [1] - 39:19
**chairman** [2] - 45:8, 45:9
**change** [1] - 39:25
**changes** [5] - 5:16, 5:20, 18:11, 18:13, 36:25
**characterized** [1] - 13:20
**check** [6] - 3:2, 3:6, 8:8, 34:25, 35:1, 40:20
**checks** [1] - 40:7
**choose** [1] - 26:6
**Circuit** [4] - 4:7, 4:21, 7:23, 7:25, 15:8, 16:4, 28:1, 32:15, 33:23, 46:13, 47:20, 48:2, 49:5, 50:3, 51:3, 58:25, 59:6
**Circuit's** [6] - 12:10, 12:15, 50:5, 50:10, 58:8, 58:17
**circumstance** [1] - 57:12
**circumstances** [4] - 27:5, 55:11, 56:16, 61:22
**cite** [5] - 6:17, 6:18, 22:1, 36:18, 62:22
**cited** [2] - 20:13, 61:4
**cites** [1] - 22:2
**civil** [9] - 3:8, 10:21, 10:23, 14:13, 15:17, 16:11, 17:25, 31:3, 31:14
**Civil** [10] - 1:2, 2:2, 2:4, 2:25, 12:16, 13:21, 13:23, 16:7, 24:5, 34:23
**CIVIL** [1] - 1:5
**claim** [2] - 22:13, 22:18
**Claims** [2] - 21:25, 22:9
**claims** [1] - 22:10
**clear** [19] - 3:12, 7:15, 12:15, 16:24, 22:24, 25:12, 25:23, 26:19, 42:23, 47:10, 47:19, 48:5, 55:5, 57:3, 59:6, 59:10, 59:24, 63:24, 64:1
**cleared** [1] - 43:1
**clearly** [10] - 4:8, 6:21, 37:12, 48:10, 49:5, 49:8, 50:2, 50:25, 61:7

**clerk** [1] - 44:9
**close** [1] - 40:2
**Collins** [6] - 26:12, 26:19, 27:1, 41:1, 41:19
**Columbia** [1] - 1:18
**COLUMBIA** [1] - 1:1
**command** [2] - 26:2, 26:8
**commission** [8] - 3:1, 33:9, 43:5, 61:10, 61:11, 61:14, 61:16, 64:20
**Commission** [7] - 13:3, 13:18, 21:25, 22:9, 40:17, 40:25, 41:7
**commissioner** [1] - 4:18
**commissioners** [1] - 13:5
**commissions** [3] - 26:14, 26:17, 26:25
**committee** [1] - 18:8
**Commodity** [1] - 41:6
**communications** [1] - 49:13
**compared** [4] - 12:24, 18:23, 27:6, 44:13
**compel** [2] - 49:1, 63:17
**complaint** [4] - 48:10, 48:21, 52:15, 54:9
**complete** [1] - 65:16
**completely** [5] - 5:11, 32:18, 34:19, 35:24, 47:19
**comprise** [1] - 25:20
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**conception** [1] - 55:1
**concern** [2] - 14:8, 15:19
**concerned** [4] - 14:11, 18:14, 32:15, 44:14
**concerns** [6] - 24:17, 35:5, 39:12, 55:19, 55:21, 59:12
**conclude** [2] - 7:12, 7:21
**concluded** [1] - 41:15
**concludes** [1] - 65:9
**conclusion** [3] - 23:3, 53:2, 64:5
**conducting** [1] - 36:12
**confer** [6] - 6:13, 25:24, 36:4, 39:5, 41:13, 47:13
**conference** [1] - 15:4

**Conference** [14] - 12:17, 15:9, 30:10, 30:12, 30:19, 32:25, 33:24, 33:25, 35:14, 35:18, 35:19, 37:15, 46:3, 46:9
**conferring** [1] - 3:20
**confers** [5] - 6:22, 26:2, 26:23, 39:6, 60:23
**confined** [2] - 43:22
**confirmation** [4] - 44:12, 45:24, 46:11, 46:21
**confirmed** [8] - 45:2, 45:9, 45:11, 46:15, 46:18, 52:22, 60:23, 61:9
**Congress** [88] - 3:1, 3:12, 4:2, 4:14, 5:21, 6:5, 6:18, 7:4, 7:8, 7:18, 8:3, 8:6, 8:10, 8:13, 8:21, 9:4, 9:23, 10:8, 10:11, 10:12, 13:10, 14:3, 14:6, 15:22, 16:6, 18:11, 18:16, 18:19, 19:2, 21:6, 21:10, 21:12, 21:16, 22:7, 23:12, 23:14, 23:21, 24:1, 24:12, 24:14, 24:22, 25:19, 26:16, 31:16, 32:13, 34:16, 35:20, 35:23, 36:4, 36:13, 36:16, 36:20, 36:21, 37:3, 37:7, 37:14, 37:18, 37:20, 37:25, 38:1, 38:7, 38:13, 38:15, 39:2, 39:3, 39:8, 39:9, 39:16, 39:17, 39:24, 40:2, 42:4, 42:12, 43:17, 44:12, 45:7, 52:22, 55:23, 57:9, 57:13, 59:19, 60:19, 63:17, 64:19, 64:21, 65:2, 65:3
**Congress's** [6] - 4:1, 5:10, 5:14, 9:9, 24:20, 57:16
**Congresses** [1] - 6:25
**congressional** [3] - 9:5, 21:4, 45:12
**consequence** [1] - 45:3
**consequences** [1] - 15:21
**consider** [1] - 42:14
**consideration** [1] - 12:14

**considered** [3] - 1:21, 35:6, 65:19
**considering** [1] - 5:23
**consistent** [1] - 11:20
**constituted** [1] - 8:7
**constitutes** [1] - 65:14
**Constitution** [5] - 11:10, 11:21, 55:7, 55:21, 57:25
**constitutional** [10] - 11:7, 11:12, 11:18, 11:24, 25:9, 25:11, 25:15, 27:22, 42:21, 59:19
**constrain** [1] - 4:8
**consult** [1] - 46:1
**contest** [1] - 38:25
**contesting** [1] - 28:22
**contests** [1] - 46:19
**context** [8] - 7:7, 12:13, 28:7, 42:15, 42:18, 50:3, 50:4, 53:12
**contextual** [1] - 45:21
**control** [3] - 15:13, 40:10, 40:21
**convey** [1] - 4:15
**correct** [3] - 33:6, 60:13, 64:9
**council** [1] - 45:2
**counsel** [10] - 2:6, 2:8, 2:20, 40:7, 40:23, 41:21, 58:7, 60:8, 63:12, 63:22
**count** [4] - 48:10, 48:20, 48:21, 63:9
**counter** [1] - 19:19
**counterterrorism** [1] - 31:3
**couple** [3] - 21:12, 25:7, 36:18
**course** [6] - 14:1, 27:12, 46:17, 48:1, 62:13, 64:24
**COURT** [90] - 1:1, 1:9, 2:11, 2:15, 3:3, 3:25, 8:3, 8:20, 9:6, 10:7, 11:5, 12:3, 12:7, 12:22, 13:8, 14:2, 14:7, 14:17, 14:25, 15:15, 16:13, 16:21, 17:8, 17:11, 17:20, 18:11, 18:20, 19:8, 19:16, 19:24, 20:5, 20:8, 20:15, 20:20, 20:23, 20:25, 21:14, 22:21, 23:6, 24:16, 25:2, 25:4, 25:16, 27:2, 29:7, 30:2, 30:6, 30:18, 30:21,

30:25, 31:9, 32:6, 32:8, 32:14, 33:4, 33:12, 36:6, 37:3, 37:16, 38:19, 39:11, 39:20, 42:4, 42:14, 44:3, 44:7, 45:13, 45:22, 46:5, 46:22, 46:24, 49:16, 51:13, 52:12, 53:1, 53:18, 53:20, 53:24, 54:11, 54:22, 55:10, 55:25, 56:9, 56:24, 57:20, 60:6, 60:8, 60:16, 64:12, 65:6
**court** [15] - 5:16, 9:15, 15:5, 38:10, 44:3, 51:1, 55:10, 61:9, 62:6, 64:3, 64:5, 64:13, 64:16, 64:19, 65:4
**Court** [52] - 1:23, 1:24, 2:16, 4:23, 5:3, 5:4, 7:12, 7:13, 7:18, 7:21, 8:1, 11:2, 11:11, 11:19, 12:25, 13:8, 13:19, 21:14, 21:16, 21:19, 26:12, 26:15, 26:20, 27:7, 27:20, 28:7, 28:12, 41:2, 41:11, 41:15, 43:2, 45:17, 46:13, 47:6, 47:17, 48:8, 50:23, 55:7, 58:10, 58:15, 58:19, 61:20, 61:23, 62:16, 62:21, 62:22, 62:24, 64:9, 64:10, 65:2, 65:25
**Court's** [8] - 23:3, 26:24, 27:14, 27:23, 41:18, 41:19, 47:19, 55:1
**courtroom** [1] - 2:24
**COURTROOM** [1] - 2:2
**courts** [16] - 5:13, 7:16, 22:15, 42:22, 43:3, 47:11, 48:24, 49:21, 49:24, 50:23, 52:19, 56:5, 63:2, 63:7, 63:9, 63:17
**courts'** [1] - 58:3
**cracks** [1] - 32:1
**create** [1] - 6:8
**created** [4] - 7:20, 14:8, 14:14, 40:11
**creates** [1] - 30:13
**creating** [2] - 9:21, 16:6
**Credit** [2] - 41:7, 41:8
**critical** [1] - 52:24

**cross** [2] - 2:18, 38:20
**cross-motion** [1] - 2:18
**current** [3] - 23:10, 37:4, 37:17
**cut** [1] - 27:2

# D

**D.C** [23] - 1:5, 4:7, 4:21, 7:23, 12:10, 12:15, 15:8, 16:4, 28:1, 33:23, 46:13, 47:20, 48:2, 49:5, 50:3, 50:5, 50:10, 51:3, 58:8, 58:17, 58:25, 59:6
**DANIEL** [1] - 1:12
**date** [1] - 59:1
**Dated** [1] - 65:24
**Davila** [2] - 1:23, 65:25
**DAVILA** [1] - 65:13
**Davis** [1] - 9:3
**day-to-day** [1] - 19:14
**days** [1] - 51:19
**DC** [2] - 1:14, 1:19
**deal** [2] - 12:3, 12:4
**debate** [1] - 24:21
**decide** [2] - 5:16, 7:13
**decided** [6] - 11:9, 11:19, 16:6, 25:19, 42:15, 54:8
**decides** [3] - 35:15, 61:6, 62:8
**deciding** [1] - 44:18
**decision** [17] - 9:10, 12:10, 19:2, 23:22, 24:2, 44:25, 47:20, 51:3, 51:4, 57:16, 58:9, 58:12, 58:17, 58:18, 58:20, 58:24, 64:2
**decisions** [1] - 62:5
**declarations** [1] - 50:19
**default** [3] - 28:8, 28:9, 28:10
**defendant** [1] - 50:16
**Defendants** [1] - 1:6
**defendants** [3] - 2:14, 8:19, 60:1
**defendants'** [2] - 2:17, 4:11
**DEFENSE** [1] - 1:16
**Defense** [1] - 41:5
**definition** [1] - 36:25
**delete** [1] - 39:12
**deleted** [4] - 34:16, 38:7, 38:13, 38:16
**deleting** [2] - 3:13,

4

3:15
**deletion** [3] - 5:10, 38:5, 38:23
**deletions** [1] - 38:11
**deliberative** [1] - 35:20
**deliver** [1] - 61:10
**delivery** [3] - 61:14, 61:15, 64:20
**Dellinger** [2] - 58:24, 59:5
**democratically** [1] - 16:14
**Democrats** [3] - 19:25, 20:4, 20:6
**demonstrate** [1] - 43:5
**demonstrates** [1] - 24:22
**denoted** [1] - 19:6
**department** [5] - 34:13, 41:25, 43:16, 43:19, 43:25
**Department** [2] - 2:13, 40:15
**department's** [1] - 43:21
**departments** [1] - 42:3
**deprived** [1] - 52:23
**DEPUTY** [1] - 2:2
**described** [5] - 3:21, 11:24, 26:14, 27:20, 28:1
**describing** [1] - 32:12
**description** [1] - 26:25
**designed** [1] - 3:1
**despite** [2] - 23:23, 24:18
**detecting** [1] - 24:19
**determination** [1] - 24:23
**determinations** [2] - 17:25, 24:15
**determinative** [2] - 13:9, 21:15
**determine** [3] - 17:14, 17:17, 50:24
**determined** [1] - 55:12
**determines** [1] - 64:9
**dictate** [2] - 19:9, 32:16
**difference** [2] - 35:17, 49:17
**differences** [4] - 27:12, 27:13, 45:20, 45:21
**different** [29] - 6:25, 7:1, 7:7, 9:17, 10:19, 12:23, 12:24, 13:22, 19:5, 26:6, 26:13, 26:25, 27:5, 27:17,

28:20, 31:10, 32:19, 34:4, 40:5, 40:10, 43:13, 44:22, 45:21, 47:7, 49:19, 55:20
**difficult** [4] - 12:11, 15:25, 59:14, 59:22
**direct** [1] - 40:3
**directed** [2] - 49:25, 64:7
**directly** [1] - 56:24
**disagree** [2] - 32:17, 53:24
**disagrees** [2] - 6:7, 59:21
**disassembled** [2] - 1:22, 65:20
**discretionary** [1] - 59:11
**discuss** [1] - 44:4
**discussed** [1] - 27:12
**discusses** [3] - 22:6, 29:23, 42:2
**discussion** [2] - 22:4, 30:11
**dismissed** [1] - 23:9
**disposition** [2] - 58:21, 58:22
**dispositive** [5] - 32:16, 41:18, 47:14, 47:25, 48:5
**disputable** [1] - 64:5
**dispute** [6] - 5:10, 24:20, 28:16, 48:9, 48:24, 54:21
**disputed** [2] - 50:15, 64:18
**dissent** [2] - 16:2, 16:17
**distinguish** [2] - 27:4, 32:14
**distinguished** [1] - 46:14
**distinguishes** [2] - 36:8, 38:17
**distributed** [2] - 1:22, 65:20
**DISTRICT** [3] - 1:1, 1:1, 1:19
**district** [1] - 56:6
**District** [1] - 1:18
**divorce** [1] - 12:14
**Doe** [1] - 62:25
**done** [6] - 4:14, 8:22, 21:11, 39:13, 49:16, 65:3
**DOUGLAS** [1] - 1:17
**down** [2] - 3:3, 3:4
**draft** [1] - 39:13
**DREIER** [1] - 1:17
**during** [3] - 51:19,

52:4, 52:5
**duties** [8] - 3:21, 9:25, 51:21, 52:21, 60:3, 60:24, 62:3, 64:8
**duty** [2] - 13:6

## E

**earn** [1] - 52:7
**earned** [3] - 52:3, 52:5, 52:8
**easy** [1] - 31:25
**ECF** [2] - 34:8, 48:13
**economy** [1] - 10:4
**Ed** [1] - 2:23
**edited** [1] - 1:21
**educate** [1] - 33:13
**effect** [3] - 5:14, 5:16, 38:10
**effective** [5] - 8:8, 29:16, 31:4, 50:11, 53:13
**effectively** [3] - 14:24, 15:12, 56:21
**effectuating** [1] - 49:13
**efficiency** [1] - 10:4
**efficient** [1] - 31:4
**effort** [1] - 17:3
**either** [3] - 11:25, 22:22, 63:4
**elected** [1] - 21:11
**election** [1] - 54:9
**electronic** [1] - 49:10
**element** [1] - 43:24
**elements** [2] - 42:3, 43:21
**Elisabeth** [2] - 2:10, 2:22
**ELISABETH** [1] - 1:11
elisabeth.theodore @arnoldporter. **com** [1] - 1:15
**ELIZABETH** [1] - 65:13
**Elizabeth** [2] - 1:23, 65:25
**emergency** [1] - 49:13
**Emily** [1] - 2:13
**EMILY** [1] - 1:16
emily.hall@usdoj. **gov** [1] - 1:20
**emphasis** [1] - 15:9
**emphasize** [1] - 28:24, 44:17
**emphasized** [5] - 22:11, 29:6, 40:24, 43:3
**emphasizes** [1] - 23:1
**emphasizing** [1] -

45:11
**employed** [1] - 64:14
**employee** [4] - 55:12, 55:16, 57:1
**employees** [2] - 33:5, 51:22
**employment** [2] - 26:6, 52:5
**empty** [1] - 4:12
**en** [4] - 47:20, 51:3, 58:8, 58:17
**enact** [2] - 21:6, 57:16
**enacted** [3] - 21:12, 42:13, 57:13
**engage** [3] - 17:4, 22:18, 60:1
**engaged** [4] - 13:18, 22:10, 22:12, 51:20
**engages** [1] - 19:6
**enjoin** [2] - 47:11, 48:3
**enjoining** [2] - 50:6, 59:25
**ensure** [5] - 3:7, 16:10, 17:3, 25:21, 35:5
**enter** [1] - 49:11
**Enterprise** [5] - 4:21, 5:3, 5:4, 7:24, 8:2
**entire** [2] - 7:2, 26:10
**entirety** [1] - 30:23
**entitle** [1] - 52:9
**entitled** [20] - 12:22, 47:2, 47:7, 47:15, 51:7, 51:13, 51:15, 52:3, 52:14, 52:15, 52:18, 53:3, 53:6, 53:11, 54:4, 57:7, 60:11, 62:10, 63:14
**entity** [9] - 13:11, 16:7, 22:12, 29:10, 29:14, 30:18, 31:17, 32:2, 55:23
**EOPE** [1] - 40:5
**equally** [1] - 24:11
**equitable** [2] - 58:4, 58:5
**equity** [4] - 63:2, 63:6, 63:7, 63:9
**equivalent** [3] - 4:6, 10:20, 10:24
**eras** [1] - 6:25
**essentially** [2] - 5:15, 5:21
**et** [4] - 1:2, 1:6, 2:3, 2:5
**event** [3] - 11:22, 49:8, 59:11
**evidence** [2] - 41:11, 50:15

**ex** [1] - 33:2
**exact** [2] - 7:8, 7:21
**exactly** [7] - 7:9, 7:23, 7:24, 8:1, 9:23, 16:3, 30:9
**example** [4] - 22:6, 36:9, 39:18, 46:17
**examples** [1] - 36:18
**exceed** [1] - 55:4
**exception** [4] - 28:5, 28:24, 28:25, 51:25
**exceptions** [2] - 28:13, 28:20
**executive** [54] - 3:2, 3:6, 3:10, 10:16, 11:14, 11:16, 11:17, 13:25, 14:9, 14:11, 14:24, 15:11, 16:8, 16:9, 17:5, 22:21, 22:24, 22:25, 23:2, 23:16, 25:1, 27:19, 28:15, 28:17, 28:19, 29:5, 29:25, 30:5, 30:14, 30:15, 30:23, 31:5, 31:20, 32:23, 33:1, 33:19, 34:1, 34:2, 34:13, 35:5, 35:10, 40:12, 40:14, 41:25, 43:10, 43:11, 43:12, 43:13, 43:21, 43:24, 45:4, 49:19, 49:22, 49:23
**Executive** [6] - 3:19, 6:2, 19:3, 40:1, 40:9, 40:10
**Executor** [13] - 12:23, 13:3, 13:20, 21:19, 22:5, 27:4, 27:15, 27:20, 27:24, 28:4, 28:24, 28:25, 40:25
**exercise** [3] - 28:11, 55:8, 56:21
**exercised** [1] - 28:12
**exercising** [2] - 43:6, 59:13
**exhibit** [1] - 9:4
**exist** [2] - 26:22, 27:10
**existed** [1] - 39:10
**existence** [4] - 14:22, 40:22, 46:14, 46:20
**exists** [7] - 24:7, 27:16, 30:7, 31:15, 40:13, 40:15, 43:9
**expect** [1] - 32:20
**expected** [1] - 29:12
**expeditiously** [1] - 65:8
**expert** [2] - 3:1, 44:24
**expertise** [2] - 24:2, 45:15

5

explain [1] - 27:4
explained [1] - 36:24
explanation [1] -
38:14
explicit [1] - 53:16
explicitly [2] - 4:9,
62:9
express [1] - 8:15
expressed [1] - 39:12
expressly [2] - 13:4,
65:2
extent [1] - 12:23,
27:5

**F**

Facilities [1] - 41:6
fact [12] - 4:23, 15:9,
16:13, 20:6, 25:16,
25:18, 33:18, 39:20,
45:13, 46:11, 49:6,
57:18
factor [1] - 44:17
factors [2] - 13:12,
23:3
fall [2] - 28:4, 31:25
familiar [1] - 33:13
far [4] - 28:9, 28:10,
32:15, 44:14
Farm [1] - 41:7
favor [1] - 13:12
FCRR [3] - 1:23,
65:13, 65:25
federal [2] - 26:14,
33:5
Federal [4] - 13:3,
13:17, 40:16, 40:25
felt [2] - 18:15, 37:18
Felten [1] - 2:23
few [1] - 24:3
FHFA [1] - 39:19
Fifth [1] - 7:25
filed [1] - 38:20
finally [4] - 59:9, 62:8,
63:12, 63:22
findings [4] - 10:8,
34:22, 34:24
fine [1] - 15:22
first [18] - 8:13, 8:22,
9:13, 12:3, 12:4,
13:2, 13:15, 25:23,
28:6, 28:21, 38:23,
39:13, 42:5, 42:9,
44:16, 48:10, 48:21,
54:6
FISA [1] - 23:7
five [5] - 4:19, 8:10,
25:20, 44:4, 44:23
five-member [2] -
25:20, 44:23

five-minute [1] - 44:4
focus [5] - 31:2,
31:24, 32:2, 38:4
focused [4] - 31:4,
32:4, 33:2, 34:1
focusing [1] - 31:16
followed [1] - 10:16
FOR [3] - 1:1, 1:11,
1:16
for-cause [8] - 4:10,
4:14, 4:20, 4:23, 5:2,
7:18, 41:16, 45:19
force [1] - 19:22
foregoing [1] - 65:14
foreign [1] - 37:1
foremost [1] - 13:16
forfeited [1] - 48:8
form [1] - 50:21
forth [1] - 9:25
forthcoming [2] -
58:12, 58:20
forthright [1] - 23:21
frankly [3] - 5:6, 5:19,
61:5
fraud [1] - 10:3
Free [5] - 4:21, 5:3,
5:4, 7:24, 8:2
freedoms [1] - 31:12
freestanding [3] -
40:12, 40:15, 40:16
front [1] - 34:10
FTC [7] - 21:20, 21:25,
27:21, 33:8, 36:9,
41:17, 44:24
fulfilling [1] - 59:3
full [2] - 48:17, 65:15
fully [1] - 58:11
function [42] - 3:10,
10:5, 11:3, 12:12,
12:21, 13:17, 13:23,
15:12, 16:5, 21:20,
21:23, 21:24, 22:14,
22:17, 22:22, 22:24,
22:25, 25:14, 27:13,
27:16, 27:18, 29:5,
29:7, 29:8, 29:9,
30:12, 33:24, 34:3,
34:18, 35:1, 35:9,
35:10, 35:14, 35:19,
36:1, 36:3, 36:14,
38:3, 42:20, 42:24,
43:4
functioning [1] - 31:4
functions [11] - 22:9,
22:15, 27:17, 30:8,
30:14, 34:15, 36:15,
37:13, 37:23, 52:24,
59:3
fundamental [2] -
15:16, 39:25

fundamentally [1] -
9:16
funds [1] - 54:5
furthermore [2] - 58:3,
58:24
Futures [1] - 41:6

**G**

garner [1] - 16:25
General [1] - 46:17
general [5] - 9:22,
19:4, 28:14, 28:19,
39:18
generally [1] - 61:5
generals [1] - 9:9
given [5] - 5:24, 42:1,
47:5, 59:12, 59:13
goal [1] - 19:21
government [17] -
11:8, 26:4, 26:14,
33:5, 34:8, 38:5,
46:8, 48:19, 51:10,
51:16, 51:23, 52:1,
52:4, 52:10, 61:4,
61:21, 62:12
government's [6] -
21:7, 34:20, 47:23,
56:7, 57:14, 61:16
greater [1] - 7:11
guess [3] - 3:25,
56:15, 60:17

**H**

HALL [60] - 1:16, 2:12,
12:8, 13:1, 13:14,
14:4, 14:15, 14:21,
15:3, 16:3, 16:18,
17:2, 17:10, 17:13,
18:5, 18:18, 18:25,
19:11, 19:21, 20:1,
20:6, 20:10, 20:16,
20:22, 20:24, 21:5,
21:18, 22:23, 23:25,
24:20, 25:3, 25:6,
25:22, 27:8, 29:19,
30:4, 30:7, 30:19,
30:22, 31:1, 31:13,
32:7, 38:22, 39:15,
39:22, 42:11, 42:17,
46:7, 46:23, 51:14,
53:21, 54:6, 54:12,
54:24, 55:14, 56:4,
56:16, 57:9, 57:21,
60:7
Hall [2] - 2:13, 34:5
hand [1] - 57:6
happy [1] - 37:19
harm [5] - 59:1, 59:7,

60:11, 60:13, 61:25
harmed [3] - 60:18,
60:21, 60:22
Harris [6] - 47:22,
51:3, 53:9, 58:8,
58:17, 62:5
hate [1] - 16:21
head [6] - 9:22, 10:18,
34:13, 41:24, 43:16,
43:19
heads [4] - 9:17,
43:22, 43:25, 44:1
hear [6] - 18:3, 18:4,
18:24, 25:4, 38:5,
62:11
HEARING [1] - 1:8
hearing [4] - 9:1, 9:5,
12:5, 17:6
held [9] - 4:7, 4:21,
33:1, 48:2, 48:20,
50:3, 50:23, 50:25,
53:10
helps [1] - 32:3
hereby [1] - 65:13
hide [1] - 18:16
high [1] - 43:4
Hill [1] - 24:17
historical [1] - 57:18
historically [2] -
15:16, 31:11
history [4] - 5:8,
12:12, 24:22, 62:16
hold [9] - 4:18, 6:7,
36:2, 47:18, 48:8,
50:25, 51:25, 59:2,
59:23
holding [5] - 41:18,
48:5, 49:14, 50:6,
64:24
holds [2] - 47:12,
61:17
honest [2] - 17:12,
23:21
honestly [1] - 19:16
Honor [72] - 2:9, 2:12,
2:21, 4:4, 4:17, 5:6,
12:6, 12:8, 13:1,
13:14, 14:4, 14:15,
14:21, 15:3, 16:3,
16:11, 16:18, 17:2,
17:13, 18:5, 18:18,
18:25, 19:11, 19:21,
20:1, 20:10, 21:5,
21:18, 22:23, 23:25,
24:20, 25:3, 25:7,
25:9, 25:22, 27:8,
29:19, 31:13, 32:7,
32:10, 33:6, 36:11,
39:15, 39:22, 41:4,
41:10, 42:11, 42:17,

44:20, 46:7, 47:1,
49:18, 53:21, 54:6,
54:13, 54:18, 54:24,
55:14, 56:4, 56:16,
57:9, 57:21, 58:14,
59:21, 59:25, 60:4,
60:7, 60:15, 61:1,
61:5, 62:5, 64:2
Honor's [4] - 26:11,
58:6, 58:13, 59:4
HONORABLE [1] - 1:8
hours [2] - 51:19, 53:6
House [2] - 8:12, 8:15
Humphrey's [17] -
7:16, 11:13, 12:23,
13:2, 13:20, 21:19,
22:5, 27:4, 27:15,
27:20, 27:24, 28:4,
28:23, 28:25, 33:8,
36:12, 40:25

**I**

idea [1] - 19:23
identified [5] - 16:4,
26:13, 40:7, 41:21,
59:16
identify [1] - 59:3
IG [1] - 10:9
IGs [11] - 9:10, 9:14,
9:17, 9:21, 10:1,
10:2, 10:7, 10:20,
10:25
II [5] - 20:18, 28:7,
39:6, 55:9, 56:23
III [4] - 22:15, 55:4,
55:9, 64:24
illegally [1] - 53:15
imagine [1] - 53:17
immediately [1] - 40:3
immunity [1] - 57:15
impact [3] - 44:9,
44:13, 44:15
implemented [2] - 8:5,
8:7
implied [3] - 22:7,
46:20, 63:15
imply [2] - 26:21,
42:22
implying [1] - 22:2
importance [2] - 23:1,
23:23, 24:18, 45:12
important [4] - 22:5,
23:17, 31:10, 31:14
impose [4] - 4:15,
21:10, 39:17, 45:19
imposed [1] - 25:17
imposes [2] - 4:23,
5:2
improper [1] - 54:7,

6

55:6, 56:23
**improve** [1] - 10:3
**inappropriate** [2] - 58:18, 60:5
**include** [5] - 10:10, 13:3, 19:22, 39:9, 59:5
**included** [1] - 39:11
**including** [7] - 19:6, 22:7, 36:25, 39:4, 45:21, 62:11, 62:19
**incompatible** [5] - 3:22, 9:11, 42:19, 42:25, 43:5
**inconsistent** [4] - 19:1, 29:9, 34:19, 35:24
**incorrect** [1] - 36:11
**incredibly** [1] - 31:14
**independence** [3] - 6:1, 8:19, 8:16
**independent** [15] - 3:2, 3:6, 3:9, 3:20, 9:17, 9:18, 10:19, 10:25, 19:7, 26:15, 35:15, 40:11, 48:11, 51:7, 52:16
**independently** [1] - 48:14
**indicate** [3] - 13:10, 21:17, 23:9
**indicated** [3] - 32:8, 33:20, 38:21
**indicates** [2] - 39:24, 45:18
**indication** [2] - 18:23, 19:8
**indicative** [1] - 45:18
**indisputable** [4] - 59:11, 59:24, 63:24, 64:1
**individual** [4] - 10:22, 22:16, 29:14, 56:18
**individuals** [7] - 10:24, 15:6, 16:14, 16:19, 20:3, 23:4, 28:22
**inefficiency** [1] - 13:6
**infer** [2] - 25:14, 26:21
**inferior** [1] - 28:21
**information** [10] - 12:13, 14:3, 14:5, 16:10, 29:25, 37:1, 37:18, 40:19, 40:20, 43:11
**informed** [1] - 23:22
**injunction** [6] - 47:3, 47:9, 48:6, 50:4, 61:23, 64:14
**injunctive** [5] - 47:25,

55:2, 58:3, 59:8, 60:9
**injury** [1] - 52:20
**input** [1] - 24:13
**inquiries** [1] - 46:6
**inspector** [1] - 9:9
**instead** [5] - 40:11, 43:18, 43:19, 45:3, 61:13
**integrated** [1] - 43:10
**intelligence** [1] - 37:1
**intelligently** [1] - 17:24
**intend** [1] - 36:4
**intended** [3] - 7:21, 10:3, 10:6
**intent** [3] - 4:1, 21:4, 45:19
**interest** [2] - 59:2, 62:2
**interested** [1] - 17:6
**interests** [1] - 17:25
**internal** [2] - 33:25, 35:20
**interpret** [3] - 28:9, 38:12, 38:15
**interpretation** [12] - 4:11, 5:12, 5:18, 5:20, 6:11, 11:9, 11:20, 11:22, 11:23, 59:14, 59:17, 64:4
**intruding** [1] - 23:18
**investigations** [1] - 36:13
**invoked** [2] - 48:11, 51:24
**involve** [4] - 62:25, 63:3, 63:6, 63:10
**involved** [1] - 24:24
**irreparable** [5] - 59:1, 59:7, 60:11, 60:13, 61:25
**issue** [20] - 12:1, 24:5, 24:6, 27:22, 32:9, 32:19, 32:21, 33:14, 37:10, 37:11, 44:4, 44:21, 47:5, 47:13, 50:13, 51:1, 54:20, 60:20, 61:7, 62:8
**issued** [3] - 24:9, 49:23, 56:6
**issues** [5] - 12:3, 31:16, 32:3, 49:19, 54:16
**itself** [1] - 14:10

### J

**Jarkesy** [2] - 4:24, 7:25

**job** [2] - 52:4, 62:3
**jobs** [4] - 52:1, 52:8, 52:9
**judge** [1] - 9:15
**JUDGE** [1] - 1:9
**Judge** [1] - 51:4
**judgment** [5] - 2:17, 2:18, 2:19, 31:17, 58:9
**judicial** [9] - 13:19, 22:9, 22:14, 22:19, 28:3, 29:1, 29:4, 43:7, 56:21
**June** [1] - 65:24
**jurisdiction** [2] - 50:23, 64:23
**Justice** [2] - 2:13, 40:16
**justifiably** [2] - 14:9, 15:19
**justification** [1] - 18:19
**justify** [1] - 59:7

### K

**Kaye** [1] - 1:13
**key** [5] - 18:7, 22:8, 23:2, 29:20, 31:7
**kind** [17] - 7:22, 10:11, 17:15, 24:13, 25:15, 28:6, 31:22, 31:25, 32:2, 40:8, 40:13, 40:20, 44:21, 45:16, 45:18, 46:19, 52:20
**knows** [1] - 53:13

### L

**lack** [1] - 27:11
**lackeys** [1] - 17:22
**language** [36] - 3:14, 3:16, 4:5, 4:19, 5:9, 5:11, 5:14, 6:11, 6:23, 7:1, 7:8, 9:23, 21:17, 21:19, 25:25, 26:1, 26:2, 26:7, 34:9, 34:16, 34:17, 38:6, 38:8, 38:12, 38:16, 38:24, 39:4, 39:8, 39:21, 41:21, 41:22, 42:1, 42:6, 44:1
**largely** [1] - 32:22
**last** [6] - 30:3, 36:21, 36:24, 37:1, 43:14, 56:5
**latch** [1] - 25:25
**law** [7] - 28:13, 44:9, 55:16, 56:10, 63:6,

63:8, 64:6
**lawsuit** [1] - 9:15
**lay** [1] - 53:22
**least** [7] - 15:16, 23:15, 23:22, 31:11, 41:3, 58:22, 59:14
**leave** [1] - 26:6
**LeBlanc** [3] - 1:2, 2:3, 2:23
**lectern** [1] - 2:6
**led** [1] - 23:3
**legal** [5] - 48:15, 48:25, 54:16, 64:4, 64:13
**legislated** [2] - 7:19, 59:20
**legislates** [1] - 39:3
**legislation** [1] - 24:23
**legislative** [9] - 9:1, 13:18, 28:3, 29:1, 29:3, 36:7, 36:14, 36:15, 43:7
**length** [2] - 7:11, 26:22
**lengthy** [1] - 30:11
**Lenny** [1] - 9:2
**less** [1] - 52:4
**letter** [1] - 4:12
**level** [1] - 43:23
**levels** [1] - 40:10
**LIBERTIES** [1] - 1:5
**liberties** [12] - 3:8, 10:22, 10:23, 14:13, 15:17, 15:24, 16:11, 18:1, 31:3, 31:12, 31:14, 35:5
**Liberties** [8] - 2:4, 2:25, 12:16, 13:21, 13:24, 16:7, 24:5, 34:23
**light** [2] - 11:23, 26:24
**likelihood** [1] - 47:5
**likewise** [1] - 4:18
**limited** [4] - 28:20, 28:25, 58:4
**line** [5] - 9:1, 34:7, 34:9, 39:24, 41:20
**lined** [1] - 8:13
**lining** [2] - 8:21, 9:4
**list** [2] - 26:13, 41:2
**listed** [1] - 34:14
**listening** [1] - 17:7
**lists** [1] - 41:2
**literally** [3] - 11:19, 34:16, 38:16
**LLP** [1] - 1:13
**local** [1] - 5:23
**look** [8] - 10:3, 16:22, 16:23, 27:14, 29:21, 34:7, 34:22, 42:12

**looking** [3] - 12:9, 12:12, 32:3

### M

**machine** [1] - 1:25
**Madison** [2] - 61:6, 61:8
**magic** [1] - 4:13
**main** [4] - 25:25, 34:5, 36:15, 64:24
**maintained** [1] - 23:24
**major** [1] - 37:12
**makeup** [1] - 25:21, 33:16
**malfeasance** [2] - 13:6, 13:7
**mandamus** [21] - 47:4, 48:7, 50:22, 50:24, 51:1, 51:5, 55:3, 59:9, 60:4, 61:15, 63:22, 63:23, 64:1, 64:4, 64:6, 64:7, 64:15, 64:21, 65:3, 65:4
**mandate** [1] - 31:24
**mandated** [1] - 35:20
**mandatory** [1] - 26:2
**manner** [2] - 1:22, 65:21
**Marbury** [5] - 50:24, 61:6, 61:8, 64:13, 64:25
**March** [2] - 58:25, 59:6
**marked** [1] - 18:14
**Massachusetts** [1] - 1:13
**matter** [1] - 2:16
**matters** [1] - 62:1
**Mattison** [1] - 50:25
**mean** [11] - 7:8, 23:14, 25:16, 31:10, 38:25, 42:15, 44:11, 50:14, 53:13, 60:11, 60:17
**meaningfully** [1] - 50:15
**meaningless** [2] - 39:21, 39:23
**means** [9] - 6:6, 6:16, 7:9, 39:16, 42:5, 42:18, 49:7, 50:12, 63:25
**meant** [3] - 9:18, 10:19, 33:3
**mechanism** [1] - 64:13
**member** [12] - 3:23, 7:20, 8:11, 9:2, 11:13, 15:20, 33:8, 41:12, 44:23, 44:24,

50:7, 50:9
**members** [36] - 3:13, 3:15, 3:16, 3:18, 4:1, 6:4, 10:5, 10:12, 11:14, 13:24, 15:13, 20:13, 21:7, 21:8, 23:9, 24:7, 25:19, 26:2, 26:5, 26:8, 26:9, 28:15, 28:16, 28:17, 33:4, 37:24, 44:10, 45:11, 45:14, 46:2, 46:9, 51:18, 51:20, 52:7, 56:2, 60:12
**mentioned** [4] - 15:5, 16:11, 57:22, 62:4
**mentions** [1] - 22:8
**mere** [2] - 6:14, 7:4
**merger** [2] - 63:6, 63:8
**merits** [1] - 54:20
**met** [1] - 23:3
**metadata** [1] - 37:10
**might** [4] - 6:7, 16:17, 53:11, 56:17
**Millett's** [1] - 51:4
**mind** [1] - 25:8
**ministerial** [3] - 60:1, 60:3, 64:8
**minority** [4] - 6:5, 10:14, 46:1, 46:2
**minute** [1] - 44:4
**mirrors** [1] - 22:14
**misconception** [1] - 63:25
**mission** [2] - 13:11, 31:9
**moment** [1] - 41:22
**monetary** [1] - 61:13
**money** [1] - 52:8
**months** [1] - 56:5
**moot** [1] - 62:21
**most** [6] - 5:20, 26:1, 28:12, 32:23, 33:18, 53:16
**MOTION** [1] - 1:8
**motion** [5] - 2:17, 2:18, 2:19, 38:20, 48:22
**move** [5] - 19:11, 19:13, 32:9, 44:8, 46:24
**MS** [87] - 2:9, 2:12, 2:21, 3:5, 4:4, 6:8, 8:24, 9:7, 10:9, 11:6, 12:6, 12:8, 13:1, 13:14, 14:4, 14:15, 14:21, 15:3, 16:3, 16:18, 17:12, 17:10, 17:13, 18:5, 18:18, 18:25, 19:11, 19:21,

20:1, 20:6, 20:10, 20:16, 20:22, 20:24, 21:5, 21:18, 22:23, 23:25, 24:20, 25:3, 25:6, 25:22, 27:8, 29:19, 30:4, 30:7, 30:19, 30:22, 31:1, 31:13, 32:7, 32:10, 32:18, 33:6, 33:17, 36:10, 37:7, 37:19, 38:22, 39:15, 39:22, 42:11, 42:17, 44:20, 45:16, 45:23, 46:7, 46:23, 47:1, 49:18, 51:14, 52:13, 53:8, 53:19, 53:21, 54:6, 54:12, 54:24, 55:14, 56:4, 56:16, 57:9, 57:21, 60:7, 60:15, 60:22, 64:15
**multi** [6] - 3:23, 7:20, 11:13, 33:8, 41:12, 44:24
**multi-member** [6] - 3:23, 7:20, 11:13, 33:8, 41:12, 44:24
**multiple** [4] - 6:18, 9:12, 23:1, 51:11
**must** [4] - 28:11, 28:14, 28:19, 38:10

## N

**named** [1] - 29:10
**National** [1] - 41:7
**national** [1] - 3:7
**natural** [2] - 26:1, 26:7
**nature** [2] - 39:25, 43:17
**naïve** [1] - 20:8
**necessarily** [2] - 50:8, 56:19
**necessity** [1] - 22:12
**need** [5] - 7:13, 16:10, 20:11, 25:15, 39:3
**needed** [2] - 20:17, 23:4
**needs** [1] - 17:23
**negative** [1] - 52:6
**neglect** [1] - 13:6
**never** [2] - 55:10, 55:25
**new** [2] - 37:4, 37:21
**next** [1] - 23:8
**none** [3] - 26:22, 62:21, 63:3
**nonissue** [1] - 54:11
**nonjurisdictional** [1] - 49:5
**nonpartisan** [8] - 3:1,

7:20, 14:25, 17:15, 18:22, 23:16, 23:20, 33:9
**notable** [1] - 35:9
**notably** [1] - 51:16
**note** [4] - 10:20, 45:6, 45:23, 53:8
**noted** [1] - 62:23
**notes** [1] - 65:15
**nothing** [5] - 4:13, 10:11, 12:20, 18:2, 46:3
**notice** [1] - 20:2
**notion** [2] - 35:24, 61:12
**novel** [1] - 60:12
**nuclear** [1] - 41:5
**Nuclear** [1] - 41:6
**null** [2] - 1:21, 65:19
**nullified** [1] - 5:11
**nullify** [8] - 5:20, 5:21, 5:22, 6:1, 6:2, 6:3, 6:10, 7:5
**number** [4] - 36:25, 61:19, 62:18, 62:19
**NW** [2] - 1:13, 1:18

## O

**objection** [2] - 14:19, 48:20
**objective** [1] - 34:6
**obligation** [1] - 14:2
**obviously** [5] - 11:12, 15:20, 25:10, 36:10, 60:10
**occur** [3] - 23:7, 27:6, 37:6
**occurring** [1] - 18:17
**occurs** [2] - 40:4, 40:6
**odds** [1] - 7:2
**OF** [2] - 1:1, 1:8
**offered** [1] - 63:15
**offering** [2] - 30:22, 31:19
**Office** [7] - 1:17, 3:19, 6:2, 19:3, 40:1, 40:9, 40:11
**office** [10] - 4:18, 47:13, 50:24, 51:1, 51:2, 57:19, 59:2, 61:13, 61:24, 64:17
**officer** [5] - 55:20, 55:24, 60:2, 61:7, 61:18, 61:25, 62:15, 65:5
**officers** [15] - 10:23, 12:19, 28:21, 28:23, 55:15, 55:22, 57:19, 58:1, 58:2, 58:5,

62:17, 63:1, 63:4, 63:7, 63:10
**official** [7] - 46:16, 47:12, 61:24, 62:2, 64:16, 65:25
**Official** [1] - 1:24
**officials** [11] - 47:12, 47:21, 48:4, 49:12, 49:14, 50:7, 50:11, 50:17, 61:21, 64:7, 64:10
**officio** [1] - 33:2
**often** [2] - 24:14, 36:16
**once** [1] - 64:5
**one** [28] - 6:8, 9:13, 9:20, 12:9, 13:10, 23:8, 24:4, 27:10, 28:20, 28:21, 29:21, 32:2, 34:24, 36:15, 37:12, 37:22, 41:22, 44:7, 45:6, 45:9, 47:3, 47:9, 49:9, 51:14, 52:13, 60:10, 60:18
**opening** [1] - 48:12
**operate** [1] - 40:20
**operates** [1] - 35:10
**opinion** [7] - 4:22, 12:15, 41:5, 50:10, 58:8, 58:14, 65:7
**opponent** [1] - 32:11
**opportunity** [4] - 27:3, 38:21, 39:16, 48:17
**oppose** [1] - 19:18
**opposed** [1] - 19:23
**opposite** [1] - 47:12
**opposition** [1] - 2:18
**order** [12] - 24:2, 25:20, 39:4, 49:20, 49:22, 49:23, 55:2, 55:11, 58:25, 59:5, 59:6, 64:20
**ordered** [3] - 37:5, 50:17, 56:2
**ordering** [1] - 50:11
**orders** [3] - 47:21, 56:6, 56:7
**ordinary** [2] - 6:21, 48:18
**original** [1] - 64:23
**outlining** [1] - 38:16
**overhaul** [1] - 39:23
**overrule** [2] - 47:18, 62:12
**oversee** [1] - 3:11
**overseeing** [3] - 29:15, 30:18, 30:22
**Oversight** [8] - 2:4, 2:25, 12:16, 13:22,

13:24, 16:7, 24:5, 34:23
**oversight** [13] - 3:9, 3:21, 9:11, 9:19, 10:2, 10:5, 10:17, 29:10, 29:13, 29:17, 29:21, 34:3, 35:7
**OVERSIGHT** [1] - 1:5
**overturned** [1] - 4:22
**own** [4] - 10:25, 40:21, 40:22

## P

**p.m** [2] - 1:5, 65:9
**page** [3] - 34:8, 48:13
**pagination** [1] - 48:13
**paid** [2] - 51:19, 57:2
**panel** [1] - 51:4
**Parsons** [1] - 7:7
**part** [16] - 14:9, 18:18, 23:15, 23:22, 24:24, 29:8, 29:9, 34:11, 39:1, 39:23, 43:15, 49:2, 52:1, 52:7, 57:1, 64:17
**part-time** [3] - 52:1, 52:7, 57:1
**participation** [1] - 45:12
**particular** [22] - 5:25, 10:4, 15:8, 22:10, 22:13, 24:6, 31:19, 31:20, 31:23, 31:25, 37:21, 39:3, 40:14, 54:15, 54:16, 57:10, 57:14, 57:16, 59:12, 64:22
**particularly** [3] - 13:25, 17:19, 32:5
**particulars** [1] - 56:17
**partisan** [8] - 3:23, 5:22, 16:19, 26:12, 26:18, 26:20, 26:23, 41:13
**partisanly** [1] - 15:1
**parts** [2] - 43:12, 43:13
**party** [8] - 1:22, 22:13, 25:20, 33:16, 33:21, 46:1, 46:2, 65:21
**passed** [3] - 8:10, 36:16, 37:25
**past** [3] - 24:12, 37:9, 38:1
**Pay** [3] - 51:23, 52:9, 54:15
**pay** [2] - 52:1, 53:7
**PCAOB** [1] - 39:18
**PCLOB** [46] - 3:13,

8

3:15, 3:16, 3:17,
3:21, 6:2, 6:4, 6:8,
8:7, 9:16, 9:23, 10:5,
10:12, 11:13, 21:24,
22:17, 23:11, 23:20,
24:1, 24:22, 24:24,
28:16, 29:3, 32:18,
32:21, 33:4, 34:3,
34:25, 36:7, 36:9,
36:16, 36:17, 37:4,
37:9, 37:13, 37:17,
37:22, 38:3, 40:24,
43:8, 43:9, 43:20,
44:14, 45:9, 56:2
**PCLOB's** [1] - 24:25
**peers** [1] - 40:18
**pending** [1] - 9:15
**people** [10] - 18:2,
18:8, 18:21, 19:22,
32:24, 33:18, 45:2,
51:25, 53:14, 53:15
**perfectly** [1] - 24:22
**perform** [11] - 3:9,
10:6, 22:15, 22:21,
22:23, 30:8, 52:21,
52:23, 53:4, 57:2,
62:4
**performance** [1] -
51:20
**performed** [3] - 15:12,
51:19, 53:6
**performing** [1] - 62:3
**performs** [1] - 22:17
**period** [2] - 52:4, 52:5
**permitted** [1] - 26:5
**permitting** [1] - 19:1
**person** [4] - 21:2,
29:17, 56:11, 61:24
**personnel** [1] - 40:21
**perspective** [3] -
17:12, 19:20, 23:16
**photocopied** [1] -
65:21
**phrase** [1] - 6:19
**pieces** [1] - 12:13
**place** [1] - 19:18
**plaintiffs** [22] - 2:10,
2:23, 12:2, 22:1,
25:7, 25:10, 25:25,
26:4, 28:22, 43:1,
47:2, 47:15, 49:12,
52:7, 52:14, 52:18,
52:21, 54:8, 54:14,
54:19, 58:1, 59:23
**Plaintiffs** [1] - 1:3
**PLAINTIFFS** [1] - 1:11
**plaintiffs'** [11] - 2:7,
2:17, 2:19, 2:20,
12:11, 22:20, 47:16,
49:10, 58:7, 59:3,

60:8
**plane** [1] - 40:13
**plausible** [1] - 11:23
**play** [3] - 11:18, 11:25,
55:19
**pleasure** [7] - 3:15,
4:5, 5:9, 5:11, 38:6,
38:24, 39:4
**point** [18] - 4:17, 20:2,
24:12, 26:11, 31:7,
39:16, 40:7, 40:23,
41:1, 41:10, 56:8,
58:6, 58:13, 59:4,
62:1, 62:5, 64:2,
65:1
**pointed** [2] - 21:19,
45:17
**points** [1] - 25:7
**policies** [2] - 29:24,
29:25
**political** [8] - 5:25,
19:17, 20:7, 20:12,
32:22, 33:16, 33:19,
33:21
**Porter** [1] - 1:13
**portion** [2] - 4:22, 44:8
**position** [18] - 5:1,
20:23, 21:1, 21:7,
23:11, 23:20, 24:1,
25:12, 26:5, 34:20,
53:24, 55:8, 56:7,
56:18, 60:13, 60:23,
60:25, 61:3
**positions** [3] - 18:2,
33:1, 45:4
**possible** [1] - 52:17
**possibly** [3] - 4:14,
14:12, 38:14
**Post** [1] - 8:25
**postdating** [1] - 63:8
**potential** [1] - 23:18
**potentially** [1] - 24:19
**power** [14] - 4:9,
11:14, 11:16, 11:17,
16:25, 28:3, 29:2,
29:4, 39:5, 39:6,
44:19, 59:13
**powers** [4] - 55:5,
55:19, 57:23, 59:12
**precedent** [2] - 47:11,
49:5
**precisely** [2] - 45:1,
47:24
**precludes** [1] - 51:11
**predating** [1] - 63:6
**premise** [1] - 50:5
**prepared** [1] - 18:15
**prerogative** [2] -
17:14, 55:6
**presence** [1] - 13:15

**presented** [1] - 21:25
**preservation** [1] -
63:15
**President** [96] - 3:12,
3:14, 3:19, 4:2, 5:24,
6:3, 6:6, 6:9, 6:20,
8:8, 8:9, 8:17, 8:18,
8:21, 9:10, 9:14,
12:19, 13:12, 13:25,
14:18, 14:23, 15:1,
15:6, 15:11, 15:13,
16:1, 16:9, 16:15,
16:20, 17:5, 17:6,
17:16, 17:21, 17:24,
18:8, 18:24, 19:3,
19:4, 19:5, 19:9,
19:22, 20:1, 20:11,
20:12, 20:16, 20:17,
20:20, 20:22, 21:1,
21:8, 21:15, 22:16,
22:25, 23:2, 25:1,
27:19, 28:11, 28:14,
30:16, 31:19, 34:2,
34:6, 34:12, 34:19,
34:21, 35:21, 35:22,
36:3, 38:7, 38:24,
39:5, 40:2, 40:9,
40:11, 41:24, 42:2,
43:19, 43:20, 45:25,
49:9, 49:17, 49:19,
49:23, 50:1, 53:14,
55:22, 55:23, 56:22,
56:23, 57:24, 61:1,
61:9, 62:11
**President's** [9] - 4:9,
17:14, 17:17, 19:12,
19:13, 32:24, 33:21,
40:3, 55:6
**presidential** [2] - 3:17,
28:2
**presidentially** [7] -
46:10, 46:12, 46:15,
46:16, 46:18, 61:8
**presume** [1] - 7:18
**presumption** [2] -
12:18, 39:2
**prevail** [1] - 47:6
**previously** [2] - 24:9,
25:18
**primary** [4] - 13:23,
24:25, 27:18, 34:5
**principal** [19] - 6:14,
28:23, 55:20, 55:22,
55:24, 57:25, 58:1,
58:5, 60:2, 61:18,
61:24, 62:15, 62:17,
62:25, 63:3, 63:7,
63:10, 65:1, 65:5
**principles** [1] - 28:6
**privacy** [7] - 3:8,

10:21, 10:23, 14:12,
15:17, 18:1, 23:18
**PRIVACY** [1] - 1:5
**Privacy** [8] - 2:4, 2:25,
12:16, 13:21, 13:23,
16:6, 24:5, 34:23
**privileges** [1] - 47:13
**problem** [1] - 23:14
**procedures** [2] -
29:24, 54:15
**proceed** [1] - 2:20
**proceeding** [1] - 65:9
**Proceedings** [1] -
1:25
**proceedings** [1] -
65:16
**produced** [1] - 1:25
**product** [2] - 1:21,
65:18
**program** [1] - 37:11
**prohibit** [1] - 7:5
**prohibition** [1] - 5:23
**promise** [1] - 38:22
**prong** [1] - 48:1
**proper** [4] - 12:14,
59:7, 59:14, 59:23
**property** [1] - 60:24,
61:3
**proposed** [1] - 25:18
**proposition** [1] - 6:17
**propriety** [1] - 22:2
**protected** [1] - 16:12
**protection** [4] - 4:24,
5:8, 6:13, 6:22, 7:22,
26:16, 53:17, 59:18
**protections** [5] - 4:16,
5:2, 25:14, 36:5,
41:16
**protest** [1] - 8:12
**provide** [13] - 13:24,
14:3, 23:20, 27:18,
34:6, 34:21, 34:25,
35:11, 35:15, 35:25,
37:13, 37:18, 57:13
**provided** [2] - 10:15,
51:16
**provides** [2] - 13:4,
48:24
**providing** [11] - 3:22,
9:18, 14:5, 14:6,
33:25, 34:12, 34:18,
35:7, 36:13, 37:23,
41:24
**provision** [4] - 25:23,
25:24, 26:23, 43:18
**provisions** [3] - 8:5,
8:14, 10:10
**public** [9] - 8:25, 9:3,
14:13, 15:18, 15:24,
18:1, 18:16, 23:19,

50:24
**pull** [1] - 41:22
**purported** [2] - 9:9,
51:10
**purpose** [10] - 8:15,
34:5, 34:12, 34:18,
34:20, 34:25, 35:3,
35:25, 41:23, 47:19
**purposes** [1] - 64:1
**pursuant** [1] - 49:22
**pursue** [2] - 26:6,
54:10
**put** [7] - 16:25, 17:21,
18:8, 19:17, 45:7,
50:14, 54:3

---

## Q

**qualification** [1] -
45:15
**quasi** [14] - 13:18,
13:19, 22:9, 22:19,
28:3, 29:1, 29:3,
29:4, 36:7, 36:14,
43:7
**quasi-judicial** [7] -
13:19, 22:9, 22:19,
28:3, 29:1, 29:4,
43:7
**quasi-legislative** [7] -
13:18, 28:3, 29:1,
29:3, 36:7, 36:14,
43:7
**questions** [4] - 11:3,
31:18, 31:21
**quickly** [2] - 58:13,
65:7
**quite** [4] - 6:20, 27:17,
50:25
**quorum** [2] - 24:8,
52:23
**quote** [7] - 3:15, 3:17,
3:18, 6:24, 9:22,
34:18, 51:20
**quoted** [1] - 48:15

---

## R

**Railroad** [1] - 41:8
**raise** [2] - 9:8, 49:6
**raised** [1] - 3:25
**rather** [3] - 40:8,
46:10, 54:19
**reach** [2] - 25:15, 53:2
**reached** [2] - 27:7,
64:5
**read** [2] - 38:25, 64:12
**reading** [5] - 7:11,
7:15, 16:18, 26:1,
26:7

9

**real** [1] - 7:14
**realistic** [1] - 19:20
**reality** [1] - 53:12
**really** [8] - 10:2, 17:23, 22:5, 31:7, 39:25, 47:16, 57:4
**reappointment** [1] - 60:2
**reason** [14] - 11:25, 20:14, 20:15, 20:16, 20:17, 31:7, 31:15, 39:9, 42:15, 43:15, 44:21, 52:13, 52:16, 54:7
**reasonable** [1] - 39:7
**reasoning** [1] - 41:19
**reasons** [11] - 9:12, 13:2, 16:4, 24:3, 27:10, 27:16, 51:7, 51:12, 51:14, 59:15, 60:4
**reauthorization** [5] - 23:6, 37:2, 37:5, 37:17, 60:20
**reauthorized** [4] - 23:8, 23:13, 24:13, 24:18
**reauthorizing** [1] - 36:22
**received** [1] - 49:13
**receiving** [1] - 17:17
**recent** [4] - 24:13, 51:2, 53:9, 61:19
**recently** [1] - 28:12
**recess** [1] - 44:6
**recognized** [3] - 52:19, 61:20, 62:6
**recommendation** [1] - 35:21
**recommendations** [2] - 30:15, 30:23
**record** [3] - 2:7, 8:20, 9:2
**red** [8] - 8:13, 8:21, 9:1, 9:4, 34:7, 34:9, 39:24, 41:20
**red-line** [5] - 9:1, 34:7, 34:9, 39:24, 41:20
**red-lined** [1] - 8:13
**red-lining** [2] - 8:21, 9:4
**redress** [1] - 48:3
**redressability** [1] - 48:1
**reduce** [2] - 19:12, 19:13
**redundancy** [1] - 42:5
**redundant** [4] - 39:8, 42:1, 42:7, 42:9
**refer** [1] - 4:10

**reference** [3] - 37:16, 39:13, 60:20
**referred** [2] - 34:11, 58:7
**refers** [2] - 44:1, 51:4
**reflected** [1] - 24:24
**regard** [1] - 55:14
**regarding** [12] - 13:3, 16:5, 22:1, 22:2, 23:17, 24:21, 26:11, 33:15, 53:25, 54:16, 54:23, 60:9
**regardless** [4] - 6:15, 21:2, 21:3, 49:25
**REGGIE** [1] - 1:8
**regulations** [2] - 29:24, 57:16
**reinsert** [1] - 38:12
**reinstate** [5] - 48:4, 63:8, 63:9, 64:11, 64:14
**reinstated** [3] - 50:12, 56:2, 61:18
**reinstatement** [34] - 12:2, 47:2, 47:15, 47:21, 48:6, 48:9, 48:12, 48:15, 49:1, 50:5, 51:2, 51:8, 51:11, 52:16, 55:2, 55:5, 55:11, 56:6, 56:7, 56:14, 56:20, 57:7, 57:23, 58:4, 58:21, 61:21, 62:6, 62:9, 62:17, 62:20, 62:23, 63:2, 63:14, 65:5
**reinstating** [2] - 47:21, 61:23
**reiterated** [1] - 47:20
**rejected** [2] - 59:1, 61:12
**rejects** [1] - 61:16
**related** [2] - 33:16, 56:24
**relating** [1] - 10:21
**relationship** [1] - 32:12
**relatively** [1] - 58:12
**relevant** [4] - 51:18, 58:21, 58:22, 65:1
**reliance** [2] - 24:14, 58:16
**relied** [1] - 36:21
**relief** [15] - 47:7, 47:18, 47:25, 48:11, 48:15, 50:6, 50:11, 50:22, 51:6, 52:10, 55:3, 59:8, 59:10, 59:24, 60:9
**rely** [3] - 24:1, 51:23,

63:1
**relying** [1] - 23:15
**remains** [1] - 46:11
**remedies** [7] - 12:4, 25:4, 44:5, 44:8, 46:24, 57:11, 58:4
**remedy** [29] - 12:1, 32:9, 47:5, 48:2, 51:4, 52:17, 52:20, 53:11, 53:13, 53:22, 54:2, 56:12, 56:15, 56:19, 56:20, 57:5, 57:8, 57:19, 58:5, 59:11, 61:11, 61:13, 62:7, 62:9, 62:19, 62:23, 64:19, 64:21, 65:5
**reminded** [1] - 44:9
**removable** [2] - 13:5, 23:4
**removal** [61] - 3:22, 4:9, 4:10, 4:14, 4:15, 4:20, 4:24, 5:2, 5:7, 5:9, 6:2, 6:16, 6:22, 7:5, 7:6, 7:12, 7:17, 7:18, 7:22, 9:11, 11:10, 11:12, 13:4, 13:13, 13:15, 19:1, 20:2, 20:14, 21:6, 21:10, 21:15, 22:3, 22:7, 25:11, 25:14, 25:24, 26:17, 26:21, 26:24, 27:9, 27:11, 28:8, 32:24, 36:5, 38:15, 38:17, 39:1, 39:5, 39:17, 41:13, 41:16, 41:20, 42:19, 42:22, 42:25, 43:6, 44:18, 45:19, 46:14, 46:19, 59:18
**remove** [17] - 3:13, 3:15, 6:6, 8:18, 9:10, 9:14, 12:19, 13:9, 19:2, 20:19, 20:21, 21:2, 21:8, 28:14, 38:7, 41:23, 54:9
**removed** [11] - 4:1, 5:25, 6:20, 16:19, 20:3, 20:13, 43:15, 44:2, 57:19, 62:10
**removes** [1] - 39:8
**removing** [3] - 3:18, 4:5, 40:1
**remuneration** [1] - 53:4
**repeat** [1] - 14:10
**repeatedly** [3] - 28:12, 36:21, 56:7
**reply** [7] - 6:24, 7:11, 9:8, 32:8, 48:23,

49:7, 63:20
**report** [14] - 6:4, 8:13, 8:23, 10:14, 10:15, 24:9, 24:11, 36:17, 36:20, 36:23, 37:21, 38:1, 39:14
**reported** [1] - 1:25
**reporter** [1] - 44:4
**Reporter** [3] - 1:23, 1:24, 65:25
**reporting** [2] - 10:8, 10:12
**reports** [8] - 10:11, 17:3, 24:6, 37:10, 37:11, 37:24, 38:2
**represented** [1] - 33:21
**reproach** [1] - 16:25
**Republican** [1] - 16:15
**request** [7] - 35:11, 37:3, 37:8, 37:21, 40:19, 43:11, 62:20
**requested** [4] - 37:24, 38:2, 56:20, 62:19
**requesting** [2] - 37:25, 60:10
**requests** [3] - 37:9, 37:11, 37:14
**require** [3] - 7:15, 37:2, 51:1
**required** [7] - 10:13, 10:15, 26:9, 28:11, 38:10, 61:10
**requirement** [7] - 5:22, 6:1, 26:23, 33:15, 45:14, 45:25, 49:4
**requirements** [3] - 26:18, 26:21, 60:10
**requires** [5] - 6:4, 7:12, 22:15, 50:8, 64:6
**reserved** [1] - 59:9
**resigned** [2] - 8:12, 9:3
**respect** [7] - 5:7, 7:24, 7:25, 8:2, 50:4, 55:18, 61:25
**respectfully** [1] - 47:6
**respond** [3] - 25:6, 38:21, 48:17
**responded** [1] - 61:4
**response** [12] - 5:14, 6:24, 7:1, 37:13, 38:5, 38:13, 46:5, 47:23, 48:18, 53:20, 62:11, 63:18
**responsibilities** [5] - 10:1, 13:21, 31:6, 32:5, 43:8

**responsibility** [6] - 10:7, 14:5, 29:11, 29:13, 29:14, 29:23
**responsible** [4] - 14:23, 15:10, 16:8, 17:16
**responsive** [1] - 50:19
**rest** [1] - 42:2
**restrict** [1] - 57:10
**restriction** [7] - 13:4, 13:15, 21:6, 27:11, 39:17, 44:18, 46:20
**restrictions** [14] - 11:11, 11:12, 21:10, 22:3, 22:8, 25:11, 25:24, 26:21, 26:24, 27:9, 39:1, 41:14, 42:22, 45:19
**result** [2] - 12:24, 27:6
**resulted** [1] - 56:11
**results** [1] - 49:20
**Retirement** [1] - 41:8
**return** [1] - 43:14
**revamp** [1] - 42:16
**review** [7] - 30:7, 30:9, 30:13, 30:16, 35:4, 49:21, 49:24
**reviewing** [6] - 29:23, 29:24, 29:25, 30:3, 30:4, 35:7
**revised** [2] - 43:17, 45:14
**revision** [3] - 8:10, 8:16, 45:10
**revisions** [1] - 38:11
**revived** [1] - 8:4
**revolved** [1] - 33:25
**rid** [7] - 14:18, 15:1, 16:1, 16:16, 19:24, 29:15, 29:18
**rights** [3] - 15:23, 23:18, 31:11
**role** [5] - 10:17, 14:6, 17:17, 24:25
**routinely** [1] - 52:19
**RPR** [3] - 1:23, 65:13, 65:25
**rule** [10] - 28:8, 28:9, 28:10, 28:14, 28:19, 32:16, 47:6, 47:19, 54:19
**rules** [2] - 48:18, 58:14
**ruling** [1] - 33:14

**S**

**Safety** [1] - 41:6
**Sawyer** [1] - 50:23
**scheduled** [1] - 23:7

**scheme** [2] - 42:25, 57:14
**Scholer** [1] - 1:13
**screenshot** [1] - 1:22
**Seaton** [2] - 61:22, 62:25
**SEC** [7] - 4:17, 4:18, 5:2, 5:7, 7:24, 8:1, 8:2
**second** [7] - 9:16, 26:11, 27:12, 28:23, 42:7, 42:8, 42:12
**secondly** [1] - 24:9
**Section** [6] - 23:7, 24:2, 24:10, 24:13, 28:17, 29:22
**section** [3] - 29:21, 35:3, 42:2
**secure** [1] - 8:16
**security** [1] - 3:7
**see** [3] - 29:16, 53:2, 53:7
**seem** [1] - 23:19
**Seila** [1] - 28:13
**selected** [1] - 44:14
**semiannual** [1] - 10:13
**Senate** [9] - 45:2, 45:9, 45:11, 46:11, 46:15, 46:18, 46:20, 60:23, 61:9
**Senate-confirmed** [2] - 46:15, 60:23
**senators** [1] - 46:1
**send** [1] - 10:10
**SENIOR** [1] - 1:9
**sense** [1] - 17:20
**separate** [2] - 10:21, 28:2
**separately** [1] - 26:22
**separation** [4] - 55:4, 55:18, 57:23, 59:12
**serve** [12] - 3:18, 5:9, 5:10, 6:10, 6:12, 6:19, 6:21, 26:1, 26:7, 26:9, 38:6, 44:15
**services** [2] - 53:4, 57:2
**serving** [3] - 4:5, 8:8, 36:14
**set** [5] - 6:8, 33:7, 33:8, 33:10, 48:25
**setting** [1] - 9:25
**several** [4] - 13:1, 26:25, 56:5, 57:13
**Severino** [54] - 4:7, 12:10, 12:15, 15:5, 15:8, 16:4, 18:7, 22:2, 22:4, 22:6,

22:8, 22:11, 22:24, 22:25, 23:3, 25:13, 25:23, 28:1, 29:5, 30:11, 30:12, 31:7, 32:15, 32:16, 32:19, 32:21, 33:2, 33:7, 33:12, 33:15, 33:23, 36:2, 38:17, 42:20, 42:21, 43:2, 44:10, 44:17, 44:22, 44:25, 45:21, 45:24, 46:4, 47:4, 47:10, 47:18, 47:24, 50:3, 50:10, 62:8, 62:9, 62:12
**Severino's** [2] - 48:3, 49:14
**shall** [12] - 1:21, 3:18, 4:18, 6:10, 6:12, 6:19, 6:21, 26:1, 26:7, 34:14, 35:4, 65:19
**share** [1] - 58:15
**sharing** [1] - 29:25
**shorthand** [1] - 1:25
**show** [1] - 60:17
**shows** [2] - 6:21, 9:11
**sic** [2] - 23:4, 40:5
**side** [1] - 27:22
**signals** [1] - 36:4
**signatory** [2] - 1:22, 65:22
**significance** [1] - 31:9
**significant** [8] - 10:12, 35:17, 36:25, 37:23, 38:3, 38:18, 50:15, 62:2
**similar** [7] - 18:7, 21:24, 40:24, 41:3, 41:4, 41:14, 41:17
**simple** [2] - 12:9, 59:16
**simply** [4] - 38:11, 46:16, 60:1, 64:10
**single** [2] - 33:24, 62:15
**singular** [1] - 32:2
**situation** [12] - 17:12, 18:6, 18:7, 18:23, 23:10, 23:21, 43:2, 43:3, 56:1, 56:11
**situations** [1] - 59:10
**six** [5] - 3:18, 6:11, 6:22, 25:17, 26:10
**slow** [1] - 3:3
**someone** [4] - 8:22, 19:17, 52:2, 57:1
**sometimes** [1] - 57:9
**somewhat** [1] - 60:16
**sooner** [1] - 6:20
**sorry** [1] - 3:5

**sort** [12] - 10:20, 11:2, 16:21, 16:22, 19:5, 22:17, 33:21, 35:19, 36:3, 44:24, 60:12, 60:16
**sorts** [7] - 22:14, 24:15, 41:3, 41:4, 43:11, 59:1, 59:25
**sought** [1] - 54:14
**sovereign** [1] - 57:14
**speaks** [1] - 40:6
**specific** [17] - 6:3, 22:14, 37:8, 37:9, 37:11, 37:14, 37:21, 37:25, 43:7, 45:25, 48:15, 48:25, 51:25, 60:24, 63:15, 63:16
**specifically** [27] - 4:2, 4:6, 4:20, 8:17, 9:21, 10:14, 21:17, 28:18, 31:16, 36:17, 37:20, 38:2, 38:13, 38:16, 43:16, 44:1, 44:25, 47:3, 53:10, 55:14, 55:18, 55:21, 56:20, 61:12, 61:20, 63:17, 64:3
**speculate** [3] - 53:5, 53:7, 54:3
**speculative** [1] - 16:20
**staff** [1] - 24:5
**stage** [1] - 51:5
**staggered** [3] - 3:23, 7:20, 45:5
**standing** [3] - 47:24, 48:1, 60:17
**start** [2] - 38:23, 47:9
**state** [3] - 2:6, 20:2, 24:4
**statement** [2] - 30:3, 63:13
**STATES** [3] - 1:1, 1:5, 1:9
**states** [1] - 63:9
**States** [14] - 1:17, 2:4, 5:1, 12:18, 12:19, 15:4, 15:10, 21:1, 30:10, 30:20, 46:9, 55:15, 55:20, 60:3
**stating** [2] - 3:17, 3:20
**status** [1] - 23:10
**statute** [54] - 4:8, 4:12, 4:15, 4:17, 5:2, 5:6, 5:7, 6:6, 6:12, 7:6, 7:12, 8:4, 9:24, 9:25, 10:21, 11:23, 12:9, 12:20, 13:2, 13:5, 21:11, 21:17, 23:17, 23:23, 24:18, 24:21, 25:12, 29:22, 32:11,

32:12, 33:10, 33:13, 34:10, 34:11, 34:24, 35:3, 38:12, 38:15, 42:6, 42:16, 45:8, 45:14, 45:20, 45:25, 46:3, 51:17, 51:18, 59:15, 63:16, 63:23, 64:22
**statutes** [8] - 6:18, 7:17, 9:20, 21:12, 28:10, 36:16, 41:10, 57:13
**statutory** [13] - 3:14, 5:14, 5:18, 6:4, 11:20, 12:12, 13:15, 39:23, 42:25, 53:16, 59:2, 59:17, 59:19
**stayed** [2] - 58:10, 58:19
**stenographic** [1] - 65:15
**Street** [1] - 1:18
**stronger** [1] - 5:7
**structural** [1] - 39:25
**structure** [22] - 11:3, 12:12, 12:20, 13:17, 21:20, 21:22, 21:23, 21:24, 25:13, 27:1, 27:12, 27:15, 40:21, 40:23, 40:24, 41:12, 41:16, 41:17, 42:19, 42:24, 43:4, 45:18
**structures** [2] - 41:3, 41:4, 41:14
**struggling** [1] - 29:11
**studies** [1] - 31:18
**study** [1] - 30:16
**subject** [8] - 3:16, 9:14, 9:21, 10:18, 12:18, 32:24, 40:9, 44:12
**subquorum** [1] - 24:4
**subsection** [2] - 28:18, 43:17
**subsequent** [1] - 12:4
**subset** [1] - 10:22
**substance** [1] - 57:21
**substantial** [1] - 11:16
**substantially** [1] - 12:22
**substantive** [2] - 31:2
**suffer** [1] - 60:13
**sufficient** [2] - 8:9, 41:13
**suggest** [2] - 42:6, 54:18
**suggested** [1] - 52:11
**suggesting** [1] - 17:21
**suggestive** [1] - 16:16
**summary** [3] - 2:17,

2:18, 2:19
**supervision** [9] - 3:17, 9:22, 10:18, 19:4, 19:5, 19:14, 40:4, 40:5
**support** [1] - 6:17
**supposed** [4] - 3:11, 29:17, 30:13, 30:14
**Supreme** [39] - 4:23, 5:3, 5:4, 8:1, 11:19, 12:25, 13:8, 13:19, 21:14, 21:16, 26:12, 26:15, 26:20, 26:24, 27:6, 27:14, 27:20, 27:23, 28:7, 28:12, 41:2, 41:11, 41:15, 41:18, 45:17, 46:12, 47:17, 50:22, 58:10, 58:19, 61:20, 61:23, 62:16, 62:21, 62:22, 62:24, 65:2
**surprised** [2] - 7:2, 58:12
**Swan** [1] - 64:2
**systems** [1] - 49:10

## T

**talks** [2] - 41:5, 51:5
**targeted** [1] - 16:15
**tasked** [2] - 32:5, 43:23
**tasks** [1] - 43:20
**teed** [1] - 54:16
**telephone** [1] - 37:10
**tenure** [1] - 6:13
**term** [13] - 3:18, 4:19, 6:10, 6:15, 6:19, 6:22, 7:4, 7:7, 14:12, 25:17, 25:23, 25:24, 26:22
**term-length** [1] - 26:22
**terminate** [1] - 53:15
**terminated** [6] - 49:9, 52:2, 55:13, 56:3, 56:12, 57:3
**termination** [6] - 48:3, 49:14, 52:4, 52:6, 52:23, 61:2
**terminations** [2] - 48:25, 50:18
**terms** [5] - 3:23, 7:21, 45:4, 46:14, 63:16
**terrorist** [1] - 24:19
**test** [1] - 42:20
**testimony** [1] - 8:11
**text** [7] - 6:4, 11:3, 25:12, 26:22, 42:23, 43:15

**textual** [6] - 13:4,
21:6, 22:7, 38:10,
38:11, 39:17
**textural** [1] - 27:11
**THE** [93] - 1:1, 1:8,
1:11, 1:16, 2:2, 2:11,
2:15, 3:3, 3:25, 8:3,
8:20, 9:6, 10:7, 11:5,
12:3, 12:7, 12:22,
13:8, 14:2, 14:7,
14:17, 14:25, 15:15,
16:13, 16:21, 17:8,
17:11, 17:20, 18:11,
18:20, 19:8, 19:16,
19:24, 20:5, 20:8,
20:15, 20:20, 20:23,
20:25, 21:14, 22:21,
23:6, 24:16, 25:2,
25:4, 25:16, 27:2,
29:7, 30:2, 30:6,
30:18, 30:21, 30:25,
31:9, 32:6, 32:8,
32:14, 33:4, 33:12,
36:6, 37:3, 37:16,
38:19, 39:11, 39:20,
42:4, 42:14, 44:3,
44:7, 45:13, 45:22,
46:5, 46:22, 46:24,
49:16, 51:13, 52:12,
53:1, 53:18, 53:20,
53:24, 54:11, 54:22,
55:10, 55:25, 56:9,
56:24, 57:20, 60:6,
60:8, 60:16, 64:12,
65:6
**Theodore** [2] - 2:10,
2:22
**THEODORE** [29] -
1:11, 2:9, 2:21, 3:5,
4:4, 8:6, 8:24, 9:7,
10:9, 11:6, 12:6,
32:10, 32:18, 33:6,
33:17, 36:10, 37:7,
37:19, 44:20, 45:16,
45:23, 47:1, 49:18,
52:13, 53:8, 53:19,
60:15, 60:22, 64:15
**theoretically** [1] - 56:9
**theory** [2] - 7:2, 63:5
**therefore** [5] - 19:19,
36:8, 53:6, 54:1,
54:4
**they've** [1] - 49:7
**thinks** [1] - 31:17
**third** [3] - 27:13, 50:21
**THOMPSON** [1] - 1:12
**three** [5] - 25:19,
27:10, 47:3, 47:7,
51:7
**thwart** [1] - 14:19

**title** [1] - 50:24
**today** [2] - 2:24, 24:11
**took** [7] - 8:13, 9:23,
34:17, 39:20, 42:6,
49:10, 52:15
**top** [1] - 43:23
**topic** [1] - 47:16
**totally** [1] - 10:19
**Trade** [4] - 13:3,
13:18, 40:17, 40:25
**Trading** [1] - 41:7
**traditional** [4] - 44:23,
57:19, 58:4, 58:5
**traditionally** [1] -
46:13
**trampling** [1] - 15:23
**transcript** [8] - 1:21,
1:21, 1:25, 65:15,
65:16, 65:18, 65:20
**TRANSCRIPT** [1] - 1:8
**transcription** [1] -
1:25
**TRAVIS** [1] - 1:2
**Travis** [2] - 2:3, 2:23
**treat** [3] - 47:12, 50:7,
50:11
**triggers** [1] - 28:2
**true** [9] - 34:7, 37:14,
39:15, 42:18, 50:19,
50:20, 57:25, 65:14,
65:15
**trusted** [1] - 15:7
**trusts** [5] - 17:10,
17:14, 17:18, 18:10
**try** [4] - 12:13, 16:16,
25:20, 65:8
**trying** [3] - 3:3, 15:21,
18:16
**turn** [4] - 11:2, 11:6,
12:1
**two** [6] - 12:3, 22:6,
24:10, 28:13, 28:20,
58:11
**twofold** [1] - 29:20
**type** [4] - 22:18, 27:1,
40:4, 40:5
**types** [1] - 31:5

## U

**U.S** [2] - 58:10, 58:19
**U.S.C** [4] - 9:20, 10:1,
48:16, 49:2
**unable** [2] - 49:21,
52:21
**under** [26] - 4:11, 5:11,
11:13, 19:4, 20:18,
23:15, 25:13, 40:3,
45:13, 47:4, 47:7,
48:9, 49:2, 49:5,

49:22, 49:24, 54:25,
55:1, 55:7, 55:11,
56:22, 57:25, 61:3,
63:16, 64:23, 65:4
**underlying** [1] - 42:15
**undermine** [2] - 14:12,
57:18
**understood** [3] - 7:4,
37:22, 42:5
**undisputed** [2] - 7:14,
64:18
**undoubtedly** [1] -
58:1
**unfettered** [1] - 13:13
**unilaterally** [1] - 7:5
**Union** [1] - 41:8
**UNITED** [3] - 1:1, 1:5,
1:9
**United** [14] - 1:17, 2:4,
5:1, 12:18, 12:19,
15:4, 15:10, 21:1,
30:10, 30:20, 46:9,
55:15, 55:20, 60:3
**unlawful** [1] - 56:8
**unlawfully** [1] - 63:18
**unless** [4] - 6:19, 11:2,
28:20, 42:23
**unlike** [1] - 45:23
**up** [6] - 18:14, 32:22,
33:7, 33:8, 33:10,
54:16
**update** [1] - 38:1
**updated** [1] - 37:23
**upheld** [2] - 7:23, 7:25

## V

**vacuum** [1] - 16:22
**value** [1] - 61:13
**version** [2] - 34:10,
45:8
**versus** [1] - 2:3
**vested** [1] - 57:24
**vests** [1] - 55:21
**via** [7] - 47:2, 47:3,
47:4, 50:24, 61:15,
64:20, 64:22
**vice** [1] - 45:8
**view** [4] - 6:5, 6:7,
19:19, 57:22
**views** [3] - 6:5, 6:8,
10:14
**violate** [2] - 11:10,
57:23
**violation** [1] - 56:10
**Vitarelli** [2] - 61:22,
62:24
**void** [2] - 1:21, 65:19
**volunteers** [1] - 44:11
**vote** [1] - 35:12

**vs** [1] - 1:4

## W

**wait** [1] - 3:3
**waivable** [1] - 49:6
**waived** [6] - 48:20,
49:7, 54:25, 57:15,
63:13, 63:21
**waiver** [3] - 48:19,
48:23, 54:22
**WALTON** [1] - 1:8
**wants** [11] - 14:18,
14:20, 16:2, 17:8,
17:9, 17:12, 17:22,
18:3, 18:8, 21:3,
62:12
**War** [2] - 21:25, 22:9
**Washington** [4] - 1:5,
1:14, 1:19, 8:25
**waste** [1] - 10:3
**watched** [1] - 29:17
**watching** [1] - 29:18
**website** [1] - 49:11
**Webster** [1] - 62:25
**week** [1] - 8:11
**weeks** [1] - 58:11
**weigh** [4] - 13:12,
23:11, 37:4, 60:19
**Weiner** [4] - 22:1,
22:5, 22:10, 22:11
**whatsoever** [3] -
11:15, 34:3, 56:12
**whereas** [1] - 44:24
**whim** [2] - 4:2, 29:15
**White** [2] - 8:12, 8:14
**whole** [5] - 8:15,
26:13, 35:14, 35:25,
50:5
**wield** [4] - 11:14,
11:16, 29:1
**Wilcox** [6] - 47:22,
51:3, 53:9, 58:8,
58:17, 62:5
**wildly** [1] - 54:3
**Williams** [1] - 50:17
**withheld** [1] - 63:18
**witnessed** [1] - 40:3
**word** [4] - 6:15, 7:4,
7:7, 10:2
**words** [3] - 4:13, 6:12,
6:15
**works** [1] - 31:22
**Writs** [1] - 65:4
**wrongfully** [2] - 55:13,
57:3
**wrote** [1] - 32:13

## Y

**YABLON** [1] - 1:12
**year** [1] - 23:8
**years** [11] - 3:18, 4:19,
6:11, 6:19, 6:22, 7:6,
7:16, 21:13, 24:10,
25:17, 26:10
**Yellen** [2] - 26:12,
41:1